425 So.2d 277 (1982)
Joseph O. CHAPMAN, Plaintiff-Appellant,
v.
GULF INSURANCE COMPANY, et al., Defendants-Appellees.
No. 82-334.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1982.
Rehearing Denied February 4, 1983.
Writs Denied March 18, 1983.
*278 Young & Burson, Kent Aguillard, Eunice, for plaintiff-appellant.
Onebane & Associates Michael G. Durand, Lafayette, Guglielmo & Lopez, James C. Lopez, Opelousas, for defendants-appellees.
Pugh & Boudreaux, Charles Boudreaux, Jr., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, FORET and LABORDE, JJ.
FORET, Judge.
This is an appeal from a judgment rendered in three related cases consolidated for trial in the court below[1].
Joseph O. Chapman, individually, and together with his wife, Carolyn Miller Chapman, (plaintiffs) brought separate tort actions [2] to recover damages for personal injuries suffered by them, when their automobile was struck from the rear by a large truck, and to recover property damages for the total destruction of their automobile.
Named defendants in both actions are: Ziegler-Trahan Dairy Products (Ziegler), the owner of the truck that struck plaintiffs; Gulf Insurance Company (Gulf), Ziegler's automobile liability insurer; Bradley Manual d/b/a Bradley Manuel's Auto Repair (Manuel), the employer of Clifton J. Lartigue (Lartigue), the driver of the truck; and, Commercial Union Insurance Company (Commercial), Manuel's general liability insurer.
The third action was brought by the Travelers Insurance Company (Travelers) to recover, by way of subrogation, $1,144.50 it paid plaintiffs pursuant to the terms of an insurance policy providing automobile collision coverage. Named defendants to Travelers' action are Lartigue, Manuel, Ziegler, and Gulf.
*279 Plaintiffs signed a "RELEASE, ASSIGNMENT AND HOLD HARMLESS AGREEMENT", releasing Manuel, Lartigue, and Commercial from any liability to plaintiffs arising out of the accident. Plaintiffs specifically reserved their right to proceed against Ziegler and Gulf on all causes of action they might have against them as a result of the accident.
Numerous third party demands were filed by defendants in all three actions. Pursuant to a motion filed by Manuel and Commercial, the trial court ordered their third party demand brought against Stanley Prater (Prater), an employee of Ziegler, dismissed without prejudice, reserving their rights against all other third party defendants named by them.
The trial court, after trial on the merits, rendered judgment in favor of defendants, Ziegler and Gulf, and against plaintiffs and third party plaintiffs, Joseph Chapman, Carolyn Chapman, Manuel, Lartigue, Commercial, and Travelers, rejecting their demands against these defendants[3]. The trial court further rendered judgment in favor of Travelers and against Manuel and Lartigue, ordering them to pay Travelers $1,144.50[4].
Plaintiffs appeal from the trial court's judgment rejecting their demands against Ziegler and Gulf, and raise the following issues:
(1) Whether the trial court erred in finding that plaintiffs failed to prove, by a preponderance of the evidence, that the brakes on the truck owned by Ziegler were defective; and, if so,
(2) Whether said defect was a cause of the accident;
(3) Whether the trial court erred in finding that the sole cause of the accident was the negligence of Lartigue;
(4) Whether Manuel is liable to them, if Lartigue was not negligent, under the provisions of LSA-C.C. Article 2317;
(5) Whether Ziegler was negligent, which negligence constituted a cause of their injuries, in inspecting and maintaining the truck which struck them;
(6) Whether Ziegler was negligent in allegedly failing to warn Bradley Manuel or Lartigue of prior incidents when the brakes on the truck failed to operate properly; and,
(7) Quantum.

FACTS
These actions arose out of an accident that occurred on June 5, 1979, on Louisiana Highway 29 (La. 29), immediately outside the Eunice City Limits. Prater had been assigned two trucks by Ziegler to use in making deliveries of its dairy products. One of these was a 1971 International dual wheel, single-axle truck (the truck). Ziegler had its headquarters in Crowley. However, Prater was allowed to keep both trucks at his home in Eunice and was responsible for their maintenance. He called Manuel on the day in question and requested that someone be sent to his home to pick up the International truck for repairs. Manuel sent Lartigue to pick up the truck.
Lartigue arrived at Prater's home that afternoon to drive the truck to Manuel's repair shop, which was located in the vicinity of plaintiffs' home on La. 29. Meanwhile, Mrs. Chapman had picked up Mr. Chapman at work. Mr. Chapman was driving, and plaintiffs were traveling east on La. 29, when they approached the driveway to their home. Mr. Chapman activated his left-turn signal and stopped in the eastbound lane, waiting for another automobile to back out of their driveway. At the same time, Lartigue was traveling east on La. 29, behind the Chapmans, when he failed to stop in time to avoid a collision with their vehicle. Mr. Chapman was slightly injured in the collision, while Mrs. Chapman was more seriously injured and hospitalized.

*280 ALLEGED DEFECTIVE BRAKES ON ZIEGLER'S TRUCK
As a preliminary matter, plaintiffs, in their briefs filed in this Court, asked that we take judicial notice of matters outside the record. Specifically, they request that we take judicial notice of what the trial court allegedly told plaintiffs' counsel during arguments on their motion for a new trial. Plaintiffs admit that there is no transcript of these arguments in the record. Under these circumstances, we cannot take judicial notice of these matters.
The trial court, in its reasons for judgment, stated:
"Having considered the evidence and briefs of counsel, it is my judgment that plaintiffs have failed to show by [a] preponderance of the evidence that the accident under consideration was caused in whole or in part because of brake failure of the Ziegler-Trahan Dairy Products truck. In my opinion, the sole cause of the accident and the resultant injuries and damages suffered was the negligence of Clifton Lartigue, which consisted,
among other things, of failing to keep a proper lookout and proper control over the vehicle he was driving at the time of the accident."
Plaintiffs state that it is somewhat difficult to ascertain, from a reading of the reasons for judgment, whether the trial court found that they had not proven that the brakes on the truck failed, or whether it found that brake failure was proven but not shown to be a cause of the accident.
From our analysis of the facts set out below, based on the record, it is our opinion that the trial court found that plaintiffs had not proven that the brakes on the truck failed. We agree with that finding.
Lartigue testified that after he began driving toward Manuel's shop, he had to apply the truck's brakes three or four times, and each time they functioned properly. At the trial on the merits, he testified that when he went to apply the brakes upon seeing plaintiffs' stopped automobile, the pedal went all the way to the floor. He then let off on the pedal and pressed it again. This second time, the pedal went down a short distance and then began to come back up despite the fact that he was pushing as hard as possible against it. He stated that he had no braking power at this time. However, at his deposition given two months after the accident, Lartigue gave a somewhat different version of what happened. He there stated that, when he went to apply the brakes, he pressed on the pedal, which went down a little, but it then began pushing back up against his foot. It did not go to the floor at all. Lartigue attempted to explain this discrepancy by stating that he was nervous when his deposition was taken. However, Prater testified[5] that Lartigue had given him the same version of how the brakes allegedly malfunctioned, as he had given in his deposition, when he spoke to Lartigue after the accident.
Richard L. Williams, the Louisiana State Policeman who investigated the accident, testified that he tested the brakes on the truck after arriving at the scene. He stated that he pushed on the brake pedal two or three times, and got no positive response from the brakes. The pedal went to the floor each time. He couldn't remember if the truck's engine was running at this time, and he had no knowledge as to whether this would affect the truck's braking system in any manner.
Bradley Manuel (Bradley) testified that he drove the truck to his shop after the accident and the brakes worked fine, although he drove at a slow rate of speed as his shop was only a block away. Bradley did some work on the truck's brakes after the accident. He had to replace some parts on the right, rear wheel's brakes, i.e., the support. The pin holding the support was still intact, though loose. The support is a *281 metal bar that ends in two circular pieces of metal, with holes in the middle of them, and a space in between the two circular pieces. The pin holding the support fits through the two circular pieces and only the outer circular piece was broken. Bradley testified that the pin was partly out and had come all the way out of the inner circular piece. He had no idea as to whether this could cause the brakes to fail, but noted once again tht the brakes had worked fine after the accident. He stated that the brake shoes were in their proper place, the brake drum looked okay, the brake cylinders looked fine, and there were no leaks in the brake line, when he examined the brakes after the accident. The brake system was full of brake fluid at this time.
Robert C. Day, accepted as an expert in the mechanics and functioning of vacuum boosted hydraulic brake systems under both operating and non-operating conditions, examined the braking system on the truck. He testified that all parts of the braking system were of the proper size, etc., as recommended by the manufacturer. He explained in detail the functioning of the brake system on the truck. He stated that it was impossible for the booster system to malfunction to the point where it would cause the brake pedal on the truck to be incapable of being depressed for any period of time. Failure of the booster system would simply cause the braking system to revert to a standard operating mode, i.e., the truck would have no power brakes, but would have standard brakes. Day stated that the only way that the brake pedal would go all the way to the floor is if the hydraulic fluid leaked out of the system. If this happened, it would then be impossible for the braking system to return to normal. He described the testimony given by Lartigue, Williams, and Bradley as being totally inconsistent. He opined that it was impossible to have complete hydraulic failure, allowing the pedal to go all the way to the floor, and then have resistance to the movement of the pedal the very next moment.
Day testified that he had never heard of a malfunction in a truck braking system occurring in a manner similar to that as testified to by the above mentioned witnesses. He stated that a broken support, as found by Bradley Manuel, would have no effect on the ability of the brakes to stop the forward motion of the truck. It would only affect the ability of the braking system to stop the truck in reverse.
Plaintiffs presented two mechanics as witnesses, who were accepted as experts in that field. They testified that it was possible for brake failure on trucks to occur as Lartigue had testified to, and that they had experienced such brake failure on a number of occasions. However, neither mechanic was able to explain just how this could occur, nor why it would occur. Bradley Manuel also testified that he had experienced this same type of brake failure, although he did state that he had never been in a situation where he was unable to depress the brake pedal at all. In fact, he testified that it was impossible to have a situation where the brake pedal could not be depressed at all, unless it was jammed against the floorboard or something else. It is obvious that the trial court rejected the testimony of these witnesses, and so do we.
Plaintiffs argue that brake failure on trucks is a fairly common occurrence. If such were the case, the resultant liability imposed on the manufacturers and sellers of trucks would certainly force them to change to some other type of braking system. Yet, the uncontradicted testimony shows that all trucks are equipped with braking systems virtually identical to that on the truck in question.
In summary, the trial court was presented with a voluminous amount of conflicting evidence. Its decision was based on its own credibility evaluations of the various witnesses. It is our opinion that the trial court's finding, that plaintiffs failed to prove any failure of the truck's braking system, is not clearly wrong. Thus, there is no need for us to address the issue of whether any causal relationship exists between this alleged defect and the injuries suffered by plaintiffs.
*282 There is also no need for this Court to address the issues of whether the trial court erred in finding that the sole cause of the accident was the negligence of Lartigue, and whether his employer may still be held liable to plaintiffs regardless of a finding of negligence on the part of Lartigue. Plaintiffs' arguments concerning these issues consist of nothing more than speculation. They make the unsubstantiated assumption that the trial court failed to hold Ziegler and Gulf strictly liable to them because it found that these defendants had proved the affirmative defense of fault of a third party, i.e., the negligence of Lartigue. However, a review of the trial court's reasons for judgment clearly indicates that it made no such finding. It certainly had no reason to do so, having found that plaintiffs failed to prove that the truck's braking system had failed.
Plaintiffs' argument on the issue of whether Lartigue's employer, Manuel, should be held liable to plaintiffs, under the provisions of LSA-C.C. Article 2317, regardless of any finding of negligence on Lartigue's part, consisted of the following. Plaintiffs contend that Manuel should be exonerated from any liability to them for two reasons. First, the trial court committed manifest error in finding that Lartigue's negligence was the sole cause of the accident. We have already mentioned that plaintiffs made the unsubstantiated assumption that the trial court failed to hold Ziegler and Gulf strictly liable to them because it found that these defendants had proved the affirmative defense of fault of a third party. Secondly, plaintiffs argue that the trial court committed manifest error in finding Ziegler to be free from fault. We have already determined that the trial court's finding, that plaintiffs failed to prove any failure of the truck's braking system, is not clearly wrong. For the reasons expressed in the following portion of our opinion, we find that plaintiffs failed to prove that any of the alleged negligent conduct of Ziegler was a cause-in-fact of the injuries suffered by them. Thus, there is no merit to plaintiffs' argument that Lartigue has proven the affirmative defense of fault of a third party, i.e., the alleged negligence of Ziegler.

ZIEGLER'S ALLEGED NEGLIGENCE
Plaintiffs contend that the trial court erred in failing to find that the alleged negligence of Ziegler was the sole, proximate cause of the accident. They allege that Ziegler failed to warn Bradley Manuel or Lartigue that the brakes on the truck were faulty. They further allege that Ziegler failed to properly inspect and maintain the truck. Plaintiffs' claim is based on the provisions of LSA-C.C. Articles 2315 and 2316.
The first inquiry in making a determination of liability under these articles is whether any causal relationship exists between the harm suffered by plaintiffs and Ziegler's alleged negligent conduct. Thus, if plaintiffs can show that they probably would not have suffered the injuries complained of but for Ziegler's conduct, they have carried their burden of proof relative to cause-in-fact. Head v. St. Paul Fire & Marine Insurance Co., 408 So.2d 1174 (La. App. 3 Cir.1982), writ denied, 412 So.2d 99 (La.1982); Wattigny v. Lambert, 408 So.2d 1126 (La.App 3 Cir.1981), writ denied, 410 So.2d 760 (La.1981); Shelton v. Aetna Casualty & Surety Co. 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Plaintiffs first allege that Ziegler failed to warn Bradley Manuel or Lartigue that the brakes on the truck were faulty. Prater was employed by Ziegler at the time of the accident, and he regularly drove the truck for Ziegler. He had contacted Manuel's and asked that the truck be picked up so that the gauges used to monitor the performance of the engine, and a motor support, could be repaired. Prater had been using the truck for approximately a month. He testified that there had been one instance where the brakes on the truck had failed to stop it as quickly as they normally did. Apparently, as he was approaching a stop sign, he applied the brakes to the point where they should have locked *283 the wheels on the truck but didn't. However, the brakes did stop the truck. He stated that the incident did not worry him as the truck was fully loaded at the time and he believed this to be the cause of the problem. Further, the brakes worked perfectly every other time he used them. He admitted that he had not told Bradley Manuel or Lartigue anything about this incident, but didn't think there was reason for any great concern. He did not mention this incident to anyone connected with Ziegler prior to the accident. Prater testified that he had never experienced a complete brake failure with the truck, nor had he ever experienced any brake malfunction similar to that testified to by Lartigue. Prater did state that his route supervisor, Larry Menard, had told him of an incident when he encountered a situation similar to that experienced by Prater with the truck's brakes. However, Menard was also able to stop the truck by use of the brakes.
Robert Day testified that there were many things that could cause "brake failure" in the nature of the two incidents testified to by Prater. These included: brake drums that are too large; brake linings that are too hard; brake linings contaminated with grease, water, oil, etc.; the weight of the load being carried; and, rapidly stopping a fully loaded truck a number of times, within a short period of time, causing the brake drums to expand from the heat generated and the brake linings to become glazed. He was of the opinion that the two incidents of "brake failure" were of a temporary, operational nature, i.e., the brake linings had become contaminated, the brake system had become overheated, or the truck was fully loaded. He did not believe that they were caused by something more serious, such as oversized brake drums or brake linings that were too hard. He based his opinion on the fact that the brakes had functioned properly after each of these incidents, which they would not have done had the wrong size parts, etc., been the cause of the problem. In such a case, the brakes would have continued to malfunction. He likened the two incidents to that experienced by motorists when passing through a puddle of water, i.e., a temporary loss of braking power until the water evaporates and the braking system returns to its normal operating condition.
We find that plaintiffs have failed to prove that the brakes on the truck were faulty. Under these facts and circumstances, Ziegler could not warn Bradley Manuel or Lartigue of a condition that did not exist.
Plaintiffs next allege that Ziegler failed to properly inspect and maintain the truck. Leo Ziegler, a part owner of Ziegler, testified that the truck was kept at Prater's house. He stated that all of Ziegler's truck drivers were instructed to perform a routine daily inspection of their trucks. As long as there were no problems with a truck, it was simply brought to a service station for routine maintenance (oil change, grease job, state inspection, etc.). He did note that Manuel had adjusted the brakes on the truck approximately one month before the accident.
Prater testified that he was responsible for maintaining the truck. He stated that he had been told by Ziegler to periodically inspect his truck and that he did so on a daily basis. Ziegler paid for all repair work performed on the truck. Prater testified that one of the reasons he quit working for Ziegler was that he was experiencing a lot of mechanical problems with the truck. It was an inconvenience to him and his customers to have the truck out of service for repairs. However, he further stated that whenever he brought the truck to Manuel for repairs, he always told the mechanics to fix whatever needed repairing as it was to his advantage to have the truck in proper operating condition. He was also furnished a smaller truck by Ziegler to use whenever the truck was being repaired, but this required more time for him to accomplish the same amount of work. Prater felt that the truck was safe for its intended uses.
We find that plaintiffs have not proven that Ziegler failed to properly maintain and inspect the truck. The evidence shows that the truck was inspected at regular intervals. *284 Further, all of Ziegler's drivers were instructed to perform routine inspections of their trucks and to bring the trucks in for repairs whenever they were needed. While these findings might be more appropriate in making a determination of whether Ziegler breached any duty it owed to plaintiffs to inspect and maintain its trucks properly, we see no need to reach that point in our analysis. Plaintiffs have not proven that improper inspection and maintenance procedures on Ziegler's part were a cause-in-fact of their injuries. Based on these findings, there is no need to make any determination as to quantum.

DECREE
For the above and foregoing reasons, the judgment of the trial court is affirmed.
All costs of this appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] These cases are: Joseph O. Chapman v. Gulf Insurance Co., et al., Docket # 78,533-1, 27th Judicial District Court, Parish of St. Landry, State of La.; Joseph O. Chapman, et ux. v. Gulf Ins. Co., et al.; Docket # 79-243-1, 27th Judicial District Court, Parish of St. Landry, State of La.; and, The Travelers Insurance Co., et al. v. The Ziegler's Dairy Products, et al., Docket # 80,979-2, 27th Judicial District Court, Parish of St. Landry, State of Louisiana.

On appeal, these cases were assigned the following docket numbers by this Court: Joseph O. Chapman v. Gulf Ins. Co., et al., No. 82-334; Chapman, et ux. v. Gulf Ins. Co., et al., 425 So.2d 284; and, The Travelers Ins. Co., et al. v. The Ziegler's Dairy Products, et al., No. 82-334 and 82-335. There was no appeal taken in The Travelers v. Ziegler suit and no judgment will be rendered therein.
[2] Carolyn Miller Chapman testified, at trial on the merits, that she and her husband, Joseph O. Chapman, were judicially separated.
[3] None of the third party plaintiffs have appealed from the trial court's judgment rejecting their third party demands against Ziegler and Gulf. Thus, that portion of the trial court's judgment is final.
[4] Manuel and Lartigue have taken no appeal from this portion of the trial court's judgment, and it is now final.
[5] Prater was subpoenaed to appear at the trial on the merits. However, the subpoena was returned with the notation that Prater was unable to be located. By stipulation of the parties, a deposition given by Prater at an earlier date was introduced in evidence for all purposes.