430 So.2d 330 (1983)
Mr. & Mrs. Jay D. MILLER, Plaintiffs-Appellants,
v.
Curley BROUSSARD, d/b/a Broussard's Seafood Restaurant, et al., Defendants-Appellees.
No. 82-741.
Court of Appeal of Louisiana, Third Circuit.
April 13, 1983.
Writ Denied June 17, 1983.
*331 Miller, Miller & Craton, Jack Derrick Miller, Crowley, for plaintiffs-appellants.
Allen, Gooch & Burgeois, Sera H. Russell, III, Lucius A. Hornsby, Jr., Lafayette, Caffery, Oubre & Dugas, Jerry A. Oubre, New Iberia, for defendants-appellees.
Before GUIDRY, STOKER and KNOLL, JJ.
GUIDRY, Judge.
Mr. and Mrs. Jay D. Miller brought this suit for damages allegedly sustained when Mrs. Miller fell on January 17, 1977, at Broussard's Seafood Restaurant, an establishment owned and operated by Curley Broussard, on premises leased from Earl Toups. To this claim, Mr. Miller joined a claim for damages that he sustained as a result of an alleged battery committed upon his person by Curley Broussard on December 11, 1979. Named as defendants were Curley Broussard, d/b/a Broussard's Seafood Restaurant; Louisiana Farm Bureau Mutual Insurance Company (hereafter Farm Bureau), the homeowner's insurer of Curley Broussard; Earl Toups; and Audubon Insurance Company, the fire insurer of Earl Toups. Summary judgment was rendered on October 21, 1980 dismissing the action against Audubon. No appeal was taken from this latter judgment.
After trial on the merits, the trial judge rendered judgment on the claim regarding the fall, against plaintiffs and in favor of all defendants. Several third party demands filed in connection with this claim were likewise dismissed. On the battery claim, the trial judge rendered judgment in favor of Mr. Miller and against Curley Broussard. The Millers appealed devolutively, addressing in brief only the ruling of the trial judge with respect to the Millers' claim for damages resulting from Mrs. Miller's fall on January 17, 1977. None of the defendants appealed or answered the Millers' appeal.

FACTS
Before opening Broussard's, Curley Broussard remodeled the leased building for use as a restaurant. This remodeling was done primarily by Mr. Broussard himself and included the installation of restrooms. The two entrances to the two restrooms were off a common hallway. In order to accommodate the plumbing for the restrooms, rather than tearing into the pre-existing concrete slab, Mr. Broussard elevated the floor of each of the restrooms seven inches above the floor of the hallway and the rest of the restaurant. Therefore, in order to enter the restrooms, a guest had to step up seven inches immediately at the door of the restroom. However, the hall is well lit and the outside door of the restroom is posted with a sign reading "step up". From the outside the rise in elevation is also made apparent by the fact that the door is above floor level. In exiting from the restroom, a guest is faced with a seven inch step down. The inside door of the restroom is flush against the floor but is posted with a "step down" sign. Both signs are approximately a foot long and two and one-half inches high. They are black with safetycolor lettering and are approximately eye level.
On January 17, 1977, Mr. and Mrs. Miller, accompanied by two other couples, visited Broussard's. While there, Mrs. Miller and Mrs. Morgan, one of the ladies in her party went into the ladies restroom together. Upon exiting, Mrs. Miller lost her balance and fell into a sitting position. The parties stipulated that there was no foreign substance on the floor. As a result of the fall, Mrs. Miller allegedly sustained an acute lumbrosacral strain and pain in the lower back and in the coccyx.
The Millers sued Curley Broussard alleging his liability under Civil Code Articles 2315 and 2317. Toups' liability is predicated upon Civil Code Articles 2315 and 2322.
The trial judge found that the method required in exiting the restroom, i.e., opening the door outwardly while simultaneously stepping down seven inches, created an unreasonable risk of injury to others and that Mrs. Miller's injury was caused by this defect. However, he concluded that Mrs. *332 Miller's recovery was barred by her contributory negligence.
In concluding that Mrs. Miller was contributorily negligent, the trial court stated:
"In this case, the Court finds that the plaintiff, Mrs. Miller, was contributorily negligent and that, based on the circumstances, her contributory negligence bars her recovery in this strict liability case. In this case, the Court finds that there were signs posted on the outside and inside of the restroom door stating `step-up' and `step-Down' (sic) respectively. The signs were black with gold or silver letters and measured 12 inches by 2½-3 inches. The hallway and restrooms were adequately lighted and the signs could be read. When Mrs. Miller went to the restroom, she had to step up to enter the restroom. The fact that she stepped up should have put her on notice that she would have to step down upon existing. Mrs. Miller used the facility and then proceeded to exit. She did not see the `step-down' sign, but the Court finds that the sign was there and she should have seen such. Upon seeing the sign, as a reasonable person, she should have exercised caution in stepping down as she opened the door. Upon seeing the sign, it should have reminded her of the step up she made earlier to enter the restroom.
Mrs. Miller testified that she simply had forgotten about the step up she made earlier. The Court finds that a reasonable person would not have forgotten under these circumstances. Between the time Mrs. Miller stepped up into the restrooms, used the facility and exited the restroom, the testimony established that a short period of time had elapsed. The Court finds a reasonable person would not have forgotten about the step up during this period of time, and especially where the door was signed `step-down'." (citations omitted) "In this case, the Court finds that Mrs. Miller was not exercising ordinary care for her own safety and that it was not reasonable for her to forget the presence of the step down."
The plaintiffs allege that contributory negligence is not available in a strict liability case and cite Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (La.1971), as modified by Dorry v. Lafleur, 399 So.2d 559 (La.1981). The trial court, relying on Wilkinson v. Hartford Accident & Indemnity Co., 400 So.2d 705 (La.App. 3rd Cir.1981) and Dorry v. Lafleur, supra, found that based on the circumstances of this case contributory negligence (victim fault) would bar recovery.[1]
Because we conclude that the trial judge erred in concluding that the step down was defective or created an unreasonable risk of harm, or that the defendants were negligent, we do not reach the issue of contributory negligence.
La.Civ.Code Art. 2317 provides in pertinent part as follows:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
In Shipp v. City of Alexandria, 395 So.2d 727, 728 (La.1981), the Supreme Court explained the legal requirements for imposing liability under 2317 as follows:
"...
We have described the legal foundation for imposing liability under art. 2317 in the following terms:
When harm results from the conduct or defect of a person or thing which creates an unreasonable risk of harm to others, a person, legally responsible under these code articles for the supervision, care, or guardianship of the person or thing may be held liable for the damage thus caused, despite the fact that no personal negligent act or inattention on the former's part is proved. The liability arises from his legal relationship *333 to the person or thing whose conduct or defect creates an unreasonable risk of injuries to others. Jones v. City of Baton Rouge, 388 So.2d 737, 739 (La.1978), citing Loescher v. Parr [324 So.2d 441], supra, at 446. An injured party seeking damages under art. 2317 need not prove negligence, that is, that any particular act or omission on the part of the defendant caused his injuries. He must only prove that the thing which caused the damage was in the care or custody of the defendant, that the thing had a vice or defect, that is, that it occasioned an unreasonable risk of injury to another, and that his injury was caused by the defect. Once these elements are proven, the custodian can escape liability only by showing that the harm was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Jones v. City of Baton Rouge, supra; Loescher v. Parr, supra."
In this case, it was undisputed that Mr. Broussard had the care and custody of the building including the restrooms.
Although the testimony concerning facts relating to the cause of the fall was conflicting, the trial court resolved this factual dispute in favor of plaintiff and her witnesses.[2] This is a matter particularly concerning the credibility and demeanor of the witnesses. We cannot say that this finding constituted manifest error. Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La. App. 3rd Cir.1979); Bertrand v. Aetna Casualty and Surety Company, 306 So.2d 343 (La.App. 3rd Cir.1975). We therefore adopt the trial court's findings that Mrs. Miller's failure to perceive the step down was the cause of the accident.
The remaining issue is whether the plaintiffs met the burden of proving by a preponderance of the evidence that, under the existing circumstances, the seven inch step down created an unreasonable risk of injury.
William Bradshaw, an expert in the field of architecture, testified that the Life Safety Code requires three risers per change of elevation in order that a person can perceive the change and negotiate it safely. He also opined that any change in elevation should be completed before opening the door to prevent surprise. Based to a great extent on this testimony, the trial court concluded that the aforedescribed condition created an unreasonable risk of injury to others.
We find that the trial judge erred in concluding that the step down presented an unreasonable risk of harm based solely on the above facts without considering whether Mr. Broussard took reasonable steps under the circumstances to protect against the risk that a person would be unable to perceive the change in elevation and fall.
The risk associated with the step down in this case is that injury may result because it is unexpected and imperceptible. As explained by Mr. Bradshaw, a person is unlikely to perceive the difference in elevation either because the doors conceal it or because one riser alone is not visually discernable. Mr. Broussard, appreciating the danger, took affirmative measures to protect against this risk by posting "step up" and "step down" signs to inform one using the restrooms of the existence of the change in elevation. The evidence indicates that the hallway and the restrooms were well lighted and the signs were of appropriate size and could be read. Mrs. Miller is a literate adult woman. The risk that she would not perceive the unexpected change in elevation was cured by the safety signs posted on either side of the door.
In the recent case of Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982), the Supreme Court stated:
"Accordingly, in a strict liability case in which the claimant asserts that the owner's damage-causing thing presented an *334 unreasonable risk of harm, the standard for determining liability is to presume the owner's knowledge of the risk presented by the thing under his control and then to determine the reasonableness (according to traditional notions of blameworthiness) of the owner's conduct, in the light of that presumed knowledge.

....
The determination of the responsibility for the accident involves an analysis and comparison of the respective duties and the responsive conduct of all parties, not only Gulf States and Kent, but also Barber's executives and the Highway Department's executives. Each had some duty in some degree to prevent the type of accident which did occur, and the conduct of each must be examined and compared in the light of the respective duties." (Emphasis added)
In the instant case, Broussard clearly had a duty to warn of the unexpected step down. However, conversely, Mrs. Miller clearly had a duty to exercise ordinary care for her own safety. In analyzing the respective duties and the responsive conduct of both parties, we are compelled to the conclusion that, under the circumstances presented, the condition of the premises did not create an unreasonable risk of injury to persons exercising ordinary care.
The case of Morgan v. Hartford Accident & Indemnity Company, et al, 402 So.2d 640 (La.1981) involved a condition almost identical to the one in this case, except that in Morgan there were no signs posted to inform one approaching the passageway of the unusual condition and the passageway was dimly lit. The failure to warn was particularly relied on by the court to find liability under 2317 and additionally, liability under 2315. In so holding, the court stated at page 642:
".... In view of the above evidence, and in addition to the fact that the building in question is a church where strangers are often in attendance, we find that this unexpected drop between two rooms in the building without attendant warning presented an unreasonable risk of injury. Therefore, defendant is liable, under La.Civ.Code art. 2317, for the injuries sustained by Mrs. Morgan and her survivors.
For the same reasons which prompt us to conclude that the eight inch drop presented an unreasonable risk of injury making defendant strictly liable for the resulting injuries occasioned by this defective condition, if required to do so, we would conclude that defendant was negligent in failing to warn of this unexpected condition.

The owner of a building, although he does not have a duty to insure against the possibility of all accidents on his premises, does have a duty to act reasonably in view of the probability of injury to others. Shelton v. Aetna, 334 So.2d 406 (La.1976). In the instant case, the eight inch drop between the two rooms presented an unexpected condition and, because of the identical texture and color of the floors in both rooms, a condition that was difficult to discern for the unwary patron. Thus it could easily be concluded that one might trip and fall because of this unexpected drop. The precautionary measure of either warning of the drop or highlighting the area would have been virtually costless and would not have interfered with the use of the passageway. Therefore, failure to take such a precautionary measure was unreasonable when balanced against the possibility of accidents resulting from the drop off, and it was a breach of the defendant's duty to its invited guests." (Emphasis added)
Under the circumstances of this case, we do not consider that the step down presented an unreasonable risk of injury to the plaintiff or similar persons.
In light of the later case of Kent v. Gulf States Utilities Co., supra, both the present case and Morgan are perhaps better decided under C.C. Art. 2315. The condition in both cases was well known to the custodian and was readily apparent. There is no need for the imposition of an absolute duty to discover under C.C. Art. 2317. The question of *335 the extent of the duty and the resulting degree of care necessary to fulfill that duty is the same under C.C. Art. 2317, strict liability, and under C.C. Arts. 2315 and 2316, ordinary negligence. Therefore our determination that the posted step down did not present an unreasonable risk of harm is also a determination that the owner took reasonable measures to render the thing safe and therefore was not negligent.
For the reasons stated above, we also conclude that the owner of the building, Toups, is not liable under C.C. Art. 2322.
LSA-C.C. Art. 2322 provides:
"The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
The Supreme Court explained the basis for liability imposed under C.C. Art. 2322 in Olsen v. Shell Oil Co., 365 So.2d 1285 (La. 1979) at 1288 as follows:
"The owner's fault is founded upon the breach of his obligation to maintain or repair his building so as to avoid the creation of undue risk of injury to others."
Because we have concluded that the condition did not present an unreasonable risk of harm to the plaintiff, we need not decide whether the step down, if defective, could constitute "ruin" under the intendment of Civil Code Art. 2322.
We therefore affirm the judgment of the trial court but for the reasons stated above. All costs of appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[1] Wilkinson, supra, was reversed, 411 So.2d 22 (La.1982), the Supreme Court ultimately determining that the school board was negligent and that the plaintiff was not guilty of contributory negligence.
[2] Defendants' witnesses testified that Mrs. Miller safely negotiated the step-down but later tripped and fell when her foot came in contact with a trash can.