CARTER, Judge,
dissenting.
I respectfully dissent from the majority opinion which affirms the trial court’s finding that the Housing Authority was negligent. As noted by the majority, plaintiff pursued her claim against the Housing Authority under theories of negligence and strict liability. Although the majority does not state its position relative to plaintiffs strict liability claim, I believe that the record fails to support a finding of liability on the part of the Housing Authority under either theory.
In a typical negligence action against the owner of a thing which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982). Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
On the other hand, in a strict liability action against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. However, the claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage or that the thing was defective. The resulting liability is strict in the sense that the owner’s duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk (the factor which usually gives rise to a duty under negligence concepts). Under strict liability concepts, the owner’s relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. Kent v. Gulf States Utilities Company, 418 So.2d at 497. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in his custody. Accordingly, the owner will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of an unreasonable risk of harm presented by the thing) is different in strict liability cases and ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends on the particular facts and circumstances of each ease. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
*1221 As the majority points out, under either theory of liability, Brinson had the burden of proving that (1) the property which caused the damages was in the “custody” of the defendant, (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises, and (3) the defect in the property was a cause in fact of the resulting injury. Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La.App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983).
In the instant case, critical to Brinson’s action against the Housing Authority as the owner of the apartment under either theory of liability is proof that her damages were the result of a vice or defect in the thing owned or leased. See Albritton v. J.C. Penney Company, Inc., 385 So.2d 549, 552 (La.App. 3rd Cir.), writ denied, 393 So.2d 727 (La.1980). Not every defect can serve as a basis for a claim for damages. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Wood v. Cambridge Mutual Fire Insurance Company, 486 So.2d 1129, 1132 (La.App.2d Cir.1986); Albritton v. J.C. Penney Company, Inc., 385 So.2d at 552. The term “defect” more appropriately denotes a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use. This standard is consistent with the strict liability standard contained in LSA-C.C. arts. 2317,
2318, 2319, 2320, 2321, and 2322. See Entrevia v. Hood, 427 So.2d 1146 (La.1983); Kent v. Gulf States Utilities Company, 418 So.2d at 497; Hunt v. City Stores, Inc., 387 So.2d 585, 588 (La.1980). The reasonableness of the risk is determined by balancing the probability and magnitude of the risk against the utility of the thing. Farr v. Montgomery Ward and Company, Inc., 430 So.2d at 1143.
In the instant case, the evidence of record fails to establish the existence of any defect in the premises. No expert or lay witness testified that the ceiling, plumbing, or any other aspect of Brinson’s apartment unit was substandard or unreasonably dangerous in normal use, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing.
There was no evidence that Brinson or any other tenant had encountered any problems with water leaking into the apartment prior to December 23, 1989. Nor was there any evidence that the plumbing leaked after the December 23, 1989, incident. Moreover, there was no evidence to establish that the configuration of the plumbing in the ceiling constituted a defect.
The undisputed testimony established that the atypical and severe weather conditions caused the water pipes in the apartment ceiling to freeze. The freezing conditions caused the pipes to burst. Thereafter, when the water in the pipes began to thaw, water flowed freely from the pipes. The water from the pipes then caused the insulation in the ceiling to become wet, which in turn caused the ceiling to fall.
Quite simply, this isolated incident caused by the inclement weather did not create an unreasonable risk of injury which is necessary for a finding of liability based upon a defect in the premises under negligence or strict liability principles. See Le v. Johnstown Properties, 572 So.2d 1070, 1073 (La.App. 5th Cir.1990);[1] Duncan v. State Farm Fire and Casualty Company, 499 So.2d 632, *1222 6B4 (La.App. 4th Cir.1986), writ denied, 503 So.2d 21 (La.1987);[2] Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829, 832 (La.App. 2nd Cir.1984);[3] Stone v. Trade-Mark Homes, Inc., 431 So.2d 61, 62 (La.App. 1st Cir.1983);[4] Miller v. Broussard, 430 So.2d 330, 332 (La.App. 3rd Cir.), writ denied, 434 So.2d 1093 (La.1983).[5] Because there was no defect in the leased premises, there can be no liability on the part of the Housing Authority.
However, in its opinion, the majority points out that Brinson’s pleadings only asserted a claim for liability arising from defective premises, but the pleadings were enlarged to include ordinary negligence under LSA-C.C. art. 2315.
In analyzing Brinson’s claim for ordinary negligence, the standard analysis we employ is the duty-risk analysis, which consists of the following four-prong inquiry:
I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred?
II. Did the defendant owe a duty to the plaintiff?
III. Was the duty breached?
IV. Was the risk, and harm caused, within the scope of the duty breached?
See Roberis v. Benoit, 605 So.2d 1032, 1041 (La.1991); Mart v. Hill, 505 So.2d 1120,1122 (La.1987).
A. CAUSE IN FACT.
The first inquiry is whether any causal relationship exists between the harm suffered by plaintiff and the defendant’s alleged negligent conduct. Thus, if plaintiff can show that she probably would not have suffered the injuries complained of but for the defendant’s conduct, she has carried her burden of proof relative to cause in fact. Chapman v. Gulf Insurance Company, 425 So.2d 277, 282 (La.App. 3rd Cir.1982), writ denied, 432 So.2d 268 (La.1983).
Cause in fact is generally a “but for” inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant’s substandard conduct, such conduct is a cause in fact. Roberts v. Benoit, 605 So.2d at 1042. In other words, the inquiry is whether the defendant contributed to the plaintiffs harm.
An alternative method for determining cause in fact, which is generally used when multiple causes are present, is the “substantial factor” test. Fowler v. Roberis, 556 So.2d 1, 5 (La.1989). Under this test, cause in fact is found to exist when the defendant’s conduct was a “substantial factor in bringing about plaintiffs harm.”
Under either method, in determining cause in fact it is irrelevant whether the defendant’s actions were “lawful, unlawful, intentional, unintentional, negligent, or non-negligent.” Roberts v. Benoit, 605 So.2d at 1042. Rather, the cause in fact inquiry is a neutral one, free of the entanglements of policy considerations — morality, culpability, or responsibility — involved in the duty-risk analysis.
*1223 Applying these principles to the instant case, I find the cause in fact determination somewhat difficult. The majority finds that the Housing Authority’s failure to advise residents of precautions to take, failure to respond within a reasonable time, and failure to provide the residents with a means of turning off their water was the conduct giving rise to liability. I do not agree that these actions constitute negligence or that the Housing Authority had a duty to perform any of these alleged omissions; however, given the neutrality of the cause in fact inquiry, I acknowledge that the actions by the Housing Authority were a cause in fact of Brin-son’s injury.
B. DUTY.
Whether a defendant owes a plaintiff a legal duty is a question of law. Phillips v. K-Mart Corporation, 588 So.2d 142,144 (La.App. 3rd Cir.1991); Annis v. Shapiro, 517 So.2d 1237, 1238 (La.App. 4th Cir.1987). Simply put, the inquiry is whether the plaintiff has any law — statutory or jurisprudential — to support his claim. Roberts v. Benoit, 605 So.2d at 1043.
Although the majority opinion does not specifically address any duty on the part of the Housing Authority, they imply that the Housing Authority had a duty to advise Brin-son of the weather forecast and the precautions to take, to make affirmative plans for the cold temperatures because they met to discuss some, to provide the tenants with a means to turn off the water in their units, and to respond within a reasonable time after receipt of notice. I do not agree that the Housing Authority owed these duties to any of its tenants. However, as owner and operator of the apartment buildings in which Brinson resided, the Housing Authority had a duty to properly maintain the apartments.
C. BREACH OF THE DUTY.
Whether a defendant has breached a duty owed is a question of fact. Phillips v. K-Mart Corporation, 588 So.2d at 144; Annis v. Shapiro, 517 So.2d at 1238. After carefully reviewing the duty of the Housing Authority to maintain the apartments, it is evident that the primary purpose for imposing the duty to maintain the apartments is to ensure that the apartments are safe for human habitation. By all accounts, the Housing Authority did so. Therefore, I do not find that the Housing Authority breach the duty it owed to Brinson. There was no condition inherent in the apartment which the Housing Authority had the duty to correct and failed to correct. As such, it did not breach its duty to Brinson.
Even assuming for the sake of argument that the Housing Authority was burdened with the duties outlined by the majority (to advise residents of the weather and the precautions to take, to respond within a reasonable time, and to provide residents with a means to turn their water off), I do not find that the record supports that the Housing Authority breached these duties.
With regard to the alleged duty to advise residents of the weather and the precautions to take, the evidence presented at the trial showed that any information officials at the Housing Authority had regarding the weather was acquired from publicized weather reports. The Housing Authority had no superior knowledge as to the severity of the weather conditions. The only information which the Housing Authority could have provided tenants would have been a reiteration of the weather reports from the radio and television broadcasts. Moreover, not all of the tenants failed to take precautions to address the cold conditions. Even though the Housing Authority did not advise the tenants as to what precautions to take, numerous tenants permitted their water to drip overnight. The plumbing of those tenants who had acted in this manner did not freeze. The record simply does not support a finding that the Housing Authority breached any duty to advise its tenants of the weather or of what precautions to take in the event of freezing temperatures.
Further, with regard to the alleged duty to respond within a reasonable time, the evidence presented at the trial showed that, at most, five (5) hours elapsed between the time that Brinson observed the first few drops of “sweat” accumulating on her walls (9:30 a.m.) and the time that the ceiling collapsed (2:30 p.m.). Brinson was not the only Housing Authority tenant to experience problems *1224 caused by the freezing temperatures. Approximately twenty-one units in two different complexes operated by the Housing Authority experienced problems on December 23, 1989. The icy conditions also made travel to the sites difficult.
However, upon receipt of notice of the problems from the Morgan City Police, the Housing Authority director met with the architect to formulate a plan to address the problems. The two men also conducted a telephone conference with the mayor. The Housing Authority director also attempted to contact the maintenance supervisor, but the maintenance crews were already working on the problems at the other Housing Authority complex. Thereafter, the Housing Authority director attempted to make accommodations for housing and meals for the residents for the weekend, contacting the Red Cross, local motels, and area restaurants. The record simply does not support a finding that the Housing Authority breached any duty to respond within a reasonable time. House v. Thompson, 452 So.2d 1195,1201 (La.App. 1st Cir.), writ denied, 457 So.2d 15 (La.1984);[6]
With regard to the alleged duty to provide residents with a means to turn them water off, the evidence presented at the trial showed that past problems caused the Housing Authority to limit access to the valves supplying water to each tenant. Water in vacant apartments had been turned on, causing problems to adjacent tenants. Area adolescents turned off water to tenant apartments as pranks, leaving tenants without water when there was no legitimate reason to be without water. The record shows that justifiable reasons for limiting tenant access to the water valves existed and, even though no tenant had access to the water valves, only a few tenants experienced problems with freezing plumbing. The record does not support a finding that the Housing Authority breached any duty to Brinson because of the lack of access to the water valves.
D. WAS THE RISK WITHIN THE SCOPE OF THE DUTY BREACHED?
This inquiry questions whether the injury the plaintiff sustained was within the contemplation of the duty. In other words, is the risk which caused the injury within the ambit of protection of the duty? There is no rule for determining the scope of the duty; it is a question of policy.
In Smith v. Travelers Insurance Company, 430 So.2d 55, 58 (La.1983), the Louisiana Supreme Court noted that, in this policy-making decision:
All rules of conduct, irrespective of whether they are the product of a legislature or are a part of the fabric of the court-made law of negligence, exist for purposes. They are designed to protect some persons under some circumstances against some risks. Seldom does a rule protect every victim against every risk that may befall him, merely because it is shown that the violation of the rule played a part in producing the injury. The task of defining the proper reach or thrust of a rule in its policy aspects is one that must be undertaken by the court in each case as it arises.
See also Dornak v. Lafayette General Hospital, 399 So.2d 168, 170 (La.1981).
In making this decision, we must determine how easily the risk of injury to the plaintiff can be associated with the duty sought to be enforced. Although ease of association encompasses the idea of foreseeability, it is not based on foreseeability alone. Absent an ease of association between the duty breached and the damages sustained, legal fault is lacking.
*1225 There is no ease of association between the Housing Authority’s duty to maintain the apartments and the risk of injury to this particular plaintiff under these particular circumstances. The Housing Authority’s duty to maintain the apartments was designed to protect some people under some circumstances against some risks. However, the Housing Authority does not have an obligation to protect every tenant against every risk that may befall him, merely because it is shown that it has a duty. The duty of the Housing Authority to maintain the apartments did not encompass the risk that south Louisiana would be afflicted with an aberrant snow storm, which would cause the pipes in apartment ceilings to burst, that these pipes would then thaw, causing water to flow into the ceilings and walls of Brinson’s apartment, that the insulation would become saturated, that the ceiling would collapse under the weight of the damp insulation and water, and that Brinson would be standing beneath the ceiling and be struck by the falling material, resulting in her personal injuries. Clearly, the risk which caused Brinson’s injury was not within the ambit of the protection of the duty.

CONCLUSION

For these reasons, I believe that the judgment of the trial court imposing liability on the Housing Authority was in error and should have been reversed.

. In Le v. Johnstown Properties, 572 So.2d 1070, 1073 (La.App. 5th Cir.1990), the court determined that it was more probable than not that, given the severe weather conditions on that day, water entered the apartment. Although the plaintiff testified that she had previously complained of water leaking into the apartment, maintenance records were void of any such evidence. There was also no evidence that water had leaked into the apartment since that time. Therefore, the jury may have concluded that the flooding was a one-time occurrence, brought about by an act of God, Hurricane Danny. Using the utility-risk balancing test, it was reasonable to conclude that, although there may have been cracks in the exterior wall, this did not create the unreasonable risk of injury necessary for a finding of strict liability. With regard to the negligence issue, the court determined that the defendants had no duty to warn plaintiffs since both plaintiffs were aware that there was water on the floor and that this created a potential hazard.

. In Duncan v. State Farm Fire and Casualty Company, 499 So.2d 632, 634 (La.App. 4th Cir.1986), writ denied, 503 So.2d 21 (La.1987), the court determined that the trial court was correct in finding that the presence of a faucet by the front door of the apartment did not pose an unreasonable risk of harm. The expert testimony showed that regardless of the faucet's location, a careless person could have left the garden hose strung out across the walkway.

. In Wilson v. Wal-Mart Stores, Inc., 448 So.2d 829, 832 (La.App. 2nd Cir.1984), the court affirmed a trial court determination that, considering the failure to establish that the assumed leakage produced a quantity of water, which with reasonable attention, could not have been controlled or sealed off from customers even if Wal-Mart knew of the presence of the water as early as its employees indicated, there was no defect which presented an unreasonable risk of harm.

. In Stone v. Trade-Mark Homes, Inc., 431 So.2d 61, 62 (La.App. 1st Cir.1983), the court affirmed a trial court determination that a cup-shaped hole, seven inches in diameter by three inches deep, on a vacant lot, does not create an unreasonable risk of injury.

. In Miller v. Broussard, 430 So.2d 330, 332 (La.App. 3rd Cir.), writ denied, 434 So.2d 1093 (La.1983), the appellate court determined that the trial judge erred in concluding that the step down was defective or created an unreasonable risk of harm or that the defendants were negligent.

. In House v. Thompson, 452 So.2d 1195, 1201 (La.App. 1st Cir.), writ denied, 457 So.2d 15 (La.1984), there was ample evidence to support that defendant received notice of the defect but failed to repair it within a reasonable time. Plaintiff first notified defendant through his wife on April 5th. Two days later a repairman arrived but departed without fixing the unit, telling plaintiff that he would have to get specific authorization from the defendant. The repairman’s employer testified that his office contacted the defendant that day to request authorization but defendant declined to engage their services. Defendant stated he was not informed until several days later that the unit had not been repaired. There was also a dispute over when plaintiff informed defendant of water leaking and whether defendant was ever told that water was leaking onto the stairs. Defendant admitted he knew of leaking water on the 13th. The unit was not finally repaired until the 21st or 22nd, and expert testimony indicated the repair could have been accomplished within several hours.