385 So.2d 549 (1980)
Ruth D. ALBRITTON, Plaintiff-Appellant,
v.
J. C. PENNEY COMPANY, INC., Liberty Mutual Insurance Company, and Louisiana Investors of Delaware, Inc., Defendants-Appellees.
No. 7610.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
Rehearing Denied July 16, 1980.
*550 Boatner & Luke, R. H. Luke, Bunkie, for plaintiff-appellant.
Bolen & Erwin, James A. Bolen, Jr., Alexandria, for defendant-appellees, Penney Co. and Lib. Mutual.
Gold, Little, Simon, Weems & Bruser, Herbert J. Mang, Alexandria, for defendant-appellee, La. Investment Co.
Before FORET, SWIFT and STOKER, JJ.
FORET, Judge.
This is a tort suit. Plaintiff, Ruth D. Albritton, brought suit against the J. C. Penney Company (hereinafter Penney), its liability insurer, Liberty Mutual Insurance Company (hereinafter Liberty), and Louisiana Investors of Delaware, Inc. (hereinafter the Mall), the owner and lessor of the premises wherein Penney conducts its retail business, to recover damages allegedly suffered as a result of a slip and fall accident plaintiff had while at the mall. In their answer, Penney and Liberty asserted a third party demand against the Mall pursuant to LSA-C.C.P. Article 1111. The case was tried to a Rapides Parish jury which exonerated all defendants of liability. While the jury found that the plaintiff did slip on a foreign object, and she did receive her injuries as a result of the accident, the jury went on to find that Penney, Liberty and Louisiana Investors were not negligent.
Plaintiff now prosecutes this appeal assigning as specification of error number I, that the jury was clearly wrong and its verdict was not supported by a preponderance of the evidence, and in specification of error number II, that the trial court committed error with reference to a "charge conference" to rule on proposed jury charges, and in submitting to the jury confusing and inconsistent verdict interrogatories, failing to provide counsel an opportunity to review or discuss the special verdict interrogatories propounded by the court, and failing to charge the jury under Article 2317 of the Louisiana Civil Code. As seen herein below, we agree with plaintiff that the jury verdict denying plaintiff recovery against Penney and Liberty was clearly wrong; so, in reversing the trial court judgment for that reason, we need not consider specification of error number II.
*551 On September 10, 1977, plaintiff went to the J. C. Penney automotive service center in the Alexandria Mall, Alexandria, Louisiana, to exchange a tire. Upon inspection of the tires on her vehicle, plaintiff was informed by Penney employees that three were defective, that they were still under warranty, and that she was entitled to have them replaced. Plaintiff was then advised that it would be approximately three hours before her vehicle would be ready. At approximately 3:30 P.M., the necessary repairs had been done. Prior to leaving the Penney premises, plaintiff could not find her new tire warranty, and was informed by Penney employees that same should be in her car's trunk. With the assistance of one of Penney's service personnel, plaintiff again searched for but could not locate the warranty. Plaintiff then, accompanied by the serviceman, was returning to the shop supervisor's desk in an attempt to locate the warranty. Upon walking up an inclined concrete apron or entranceway surrounding the shop area, plaintiff allegedly slipped on a foreign object,[1] causing her to fall and sustain an "egg shell" fracture on the nose, a fracture of the radius of the right arm, and other minor abrasions and bruises.
Appellate jurisdiction of the courts of appeal of this State extends to both law and fact. La.Const., 1974, Art. 5, § 10(B). The standard for appellate review in Louisiana, which has been enunciated in Canter v. Koehring Company, 283 So.2d 716 (La.1973) and was thereafter clarified in Arceneaux v. Domingue, 365 So.2d 1330 (La.1979) and its progeny, that: "the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous)..." is now axiomatic and no further discussion or citation is necessary. After a thorough review of the record before us, we are of the opinion that the jury's application of the relevant law to the facts is manifestly erroneous. Under the provisions of LSA-C.C.P. Article 2164, we are empowered to render any judgment which is just, legal and proper upon the record on appeal and reverse the trial court, where appropriate, and render judgment accordingly in lieu of a remand.
The jury found that plaintiff did in fact slip and fall on a foreign object while on the premises of the defendant, J. C. Penney automobile repair facility and that she received injuries as a result of said fall.
In Louisiana, storekeepers owe an affirmative duty to their customers to use ordinary or reasonable care to keep aisles, passageways, and floors in a reasonably safe condition and this duty includes a reasonable effort to keep objects off the floor which might give rise to a slip and fall. These reasonable protective measures which must be taken to insure that the aisles and floors are free of substance or objects which may cause customers to fall, include periodic inspections. Broussard v. National Food Stores of Louisiana, Inc., 233 So.2d 599 (La. App. 3 Cir. 1970), affirmed 258 La. 493, 246 So.2d 838 (1971); Kavlich v. Kramer, 315 So.2d 282 (La.1975); Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976).
Once the plaintiff has established a prima facie case, i. e., that a hazardous condition existed and that it caused his injury, an inference of negligence arises and the burden of proof[2] falls upon the defendant, who must then go forward with evidence to exculpate himself from the presumption that he was negligent. Kavlich v. Kramer, supra; Gonzales v. Winn-Dixie, supra. Thus it became incumbent on the defendants to exculpate themselves once the plaintiff proved that she slipped on a foreign object and was injured.
Owners and occupiers of land have an affirmative duty to exercise reasonable *552 care in maintaining their premises in a safe condition and of warning any individuals, who they know or should have known may venture onto those premises, of any concealed or hidden defects. LSA-C.C. Articles 2315, 2316; McCauley v. Nicholas, 297 So.2d 914 (La.App. 1 Cir. 1974), writ denied 302 So.2d 24 (La.1974). LSA-C.C. Article 2695, which provides for strict liability of a landlord for damages resulting from hazardous conditions on the leased premises, is restricted to the landlord-tenant relationship and does not apply to third parties, whose rights are protected by LSA-C.C. Articles 2315, 2316, 2322, and former Article 670 (see now Article 660). Reed v. Ramsay, 355 So.2d 618 (La.App. 4 Cir. 1978). In order for a plaintiff to recover from a landowner-lessor, he must prove that the damages he suffered were as a result of a defect or vice in the thing owned or leased. Lanclos v. Tomlinson, 351 So.2d 1218 (La. App. 3 Cir. 1977), writ denied, 352 So.2d 1023 (La.1977).
Additionally, not every defect can serve as a basis for a claim. The defect must be of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. McCauley, supra; Templin v. Traders & General Insurance Co., 288 So.2d 660 (La.App. 3 Cir. 1974).
Mrs. Albritton did not slip and injure herself because of any fault or defect in the design or construction of the leased premises. There is no evidence in the record to indicate that defects existed. At no time during the course of events which precipitated the injury sued upon was the Mall in control, actual or constructive, of the concrete area where the plaintiff fell. As is evident from a cursory glance at Exhibit "B", the area where plaintiff fell was leased to defendant, J. C. Penney. The Mall was responsible for the cleaning of "common areas" such as sidewalks, parking lots, public toilets, etc. Obviously, by the very use of the word "common" as an adjective to describe the word "areas" is meant such areas as are used conjointly by the Mall tenants. Penney argues that the Mall was responsible for the area where plaintiff fell. We disagree. Nowhere in the lease can we find any provision which would seem to support his assertion. As noted previously, the apron where plaintiff fell is clearly delineated on the Mall's Exhibit "B" as being leased to J. C. Penney.
Defendant, Louisiana Investors of Delaware, Inc., owner and lessor of the premises where plaintiff fell and was injured, has successfully carried its burden. It is for these reasons that we will affirm that part of the verdict finding the Mall not negligent and additionally will dismiss the third party demand by J. C. Penney against the Mall.
Unlike the Mall, however, J. C. Penney has failed to carry its burden. There was no regular pattern of frequent inspection and cleaning of the area in question by any Penney employees. Both Reggie French, the merchandise manager of Penney's automotive store, and Rickey Gauthier, the shop foreman at Penney's, testified that the cement apron where plaintiff fell was cleaned when mechanics were not too busy to clean it. French did say that the shop and adjoining area was cleaned every morning, but cleaning during the day is done on a sporadic basis. Gauthier testified that on days when the workload is particularly heavy, the apron may not be cleaned at all. Both men testified that not only was it possible for debris from inside the shop to somehow find its way to the apron, but that this in fact occurs from time to time. French stated that the apron is cleaned when "necessary". It is also noteworthy that Penney has a policy of allowing its automotive customers into the shop area so that they may view first hand the repairs being made to their vehicles. (Tr., pp. 82, 83). Penney's automotive customers, like patrons of any merchandising establishment, are entitled to have a reasonably safe place to walk. Under the present jurisprudence of this State, the weight of which holds that storekeepers have a heightened duty to minimize the risk of slip and fall accidents by frequent inspections and cleanups, *553 we find that J. C. Penney breached its duty and said breach was a cause-in-fact of plaintiff's harm.

QUANTUM
Plaintiff seeks as damages $173.67 for past unpaid and future medical expenses, $903.00 for loss of sick leave and/or wages, and $20,000.00 for residual disabilities, pain and suffering.
Defendant, Liberty Mutual, has paid approximately $3,000.00 to plaintiff for loss of wages and/or sick leave and for past medical expenses. The $903.00 plaintiff claims for loss of sick leave represents approximately 260 hours at an average of $3.50 per hour. However, $3.50 multiplied by 260 equals $910.00. In her petition, plaintiff prayed for $2,025.00 for loss of wages. Plaintiff testified that she lost approximately 270 hours of sick leave which she was not compensated for. Mr. C. J. Dupont, plaintiff's supervisor, testified that plaintiff lost a total of 732 hours of sick leave and/or wages as a result of her accident. We find that the record supports an award of $910.00 for loss of sick leave and/or wages, and same will be awarded.
Following her accident, plaintiff was rendered first aid and was immediately taken to St. Frances Cabrini Hospital for emergency treatment. She was x-rayed and treated by Dr. Thomas Lacour. She was diagnosed as having an egg shell nasal fracture and fractured radius of the right arm. Plaintiff was later released and returned home that evening. The following day, plaintiff was x-rayed again and placed in a full arm plastic cast for approximately six weeks. She was seen by Dr. Lacour again on September 14, 1977 and on September 21, 1977. On September 26, 1977, plaintiff was seen by Dr. James White, who recommended surgery on her nose. A close reduction nasal fracture operation was performed by Dr. White at Rapides General Hospital on September 28, 1977. Thereafter, plaintiff was seen on October 4, 1977, by Dr. Lacour, who x-rayed plaintiff's sinuses and found that they were infected. On October 19, 1977, plaintiff's cast was removed from her right arm, and she attended out-patient therapy at St. Frances Cabrini Hospital for the next ten days.
On November 3, 1977, plaintiff was seen again by Dr. Lacour, who found that she lacked 20° in having full extension of her right arm, and was having difficulty in breathing through her nostrils. Plaintiff, at this time, had been discharged by Dr. White. On April 4, 1978, plaintiff was again seen by Dr. Lacour, who found that plaintiff had some tenderness and swelling of the nose. She also had difficulty in breathing and could not wear glasses for a long period of time without experiencing pain.
On April 5, 1978, plaintiff reinjured her arm in the course of her work while carrying file folders. On April 11, 1978, x-rays revealed that the radius of her right arm (elbow) had separated components due to the original fracture. On April 13, 1978, after consultation with Dr. P. M. Davis, orthopedic surgeon, plaintiff was placed in a posterior splint for approximately one week, and thereafter in a flaccid-type cast for another week. From January of 1978, through September of 1979, plaintiff was treated on several occasions by Dr. Lacour for pain, tenderness, swelling, and osteoarthritis of her right elbow. The cast was removed from plaintiff's elbow on May 9 of 1978. In August of 1978, her nose and elbow were again x-rayed. Throughout her treatment, plaintiff continued taking various medications for pain.
Plaintiff was examined on February 27, 1979, by Dr. C. W. Lowrey, an orthopedic surgeon, at the request of counsel for defendants, Penney and Liberty Mutual. Dr. Lowrey had previously concluded, on November 6, 1978, that plaintiff had approximately a 5% permanent and partial impairment of the upper extremity as a whole, but could continue her prior employment as assistant director of housing for the Town of Bunkie. On September 6, 1979, plaintiff was again examined at the instance of counsel for defendants, Penney and Liberty Mutual, and her biceps were measured.
*554 The left bicep measured 111/8 inches and the right bicep, the one on the injured arm, measured 9½ inches. The elbow was tender and pain was present during the last 20° of full extension.
Plaintiff's exhibit # 9 shows that plaintiff has sustained $173.67 in medical expenses for which she has not been compensated. No evidence was offered to rebut plaintiff's allegation as to these expenses. We therefore find it a proper item of damage.
Plaintiff has experienced considerable pain and suffering, as is evidenced from the foregoing summary of her medical history resulting from the injuries she received. Based on the record before us, we feel an award of $15,000.00 as general damages in favor of Mrs. Albritton is justified.
For the reasons assigned, the judgment of the trial court is reversed and judgment is rendered herein as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, Mrs. Ruth D. Albritton and against the defendants, J. C. Penney and Liberty Mutual Insurance Company, in the sum of $16,083.67.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Louisiana Investors of Delaware, Inc. and against defendants, J. C. Penney and Liberty Mutual Insurance Company, dismissing their third party demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment of the trial court finding the defendant, Louisiana Investors of Delaware, Inc., not negligent and therefore not liable to plaintiff be affirmed.
All costs of these proceedings, both at trial level and on appeal are assessed against the defendants, J. C. Penney and Liberty Mutual Insurance Company.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] Plaintiff alleges that she slipped on a rubber valve stem. These stems are ordinarily attached to automobile tires so that the tires may be inflated with air.
[2] For a concise analysis of the bifurcated nature of this concept, see 37 La.Law Rev. 636, Note 13, at page 636.