486 So.2d 1129 (1986)
Michael WOOD, Plaintiff-Appellant,
v.
CAMBRIDGE MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellee.
No. 17695-CA.
Court of Appeal of Louisiana, Second Circuit.
April 2, 1986.
*1130 Neal G. Johnson, Monroe, for plaintiff-appellant.
Theus, Grisham, Davis & Leigh by Charles H. Heck, Monroe, for defendant-appellee.
Before HALL, NORRIS and LINDSAY, JJ.
HALL, Chief Judge.
Plaintiff, Michael Wood, appeals from the judgment of the trial court in favor of *1131 defendant, Cambridge Mutual Fire Insurance Company, in plaintiff's action for damages as a result of personal injuries sustained in a fall in the front yard of the home plaintiff was leasing from the defendant's insured.
FACTS
On September 24, 1983, at approximately 6:00 p.m., plaintiff was leaving his home located in Monroe, Louisiana to take a walk and stepped into a hole or depression caused by a rotted tree stump in his front yard, causing him to fall and injure his knee. Plaintiff and his family were leasing the home from the plaintiff's grandmother, Susie Glenn Morgan Shields, and had lived at the residence for approximately one year prior to the accident. The oral lease agreement provided for a reduced rental rate and that the plaintiff-lessee would be responsible for simple yard maintenance, such as mowing the grass. Several years prior to plaintiff's current occupancy, the plaintiff and his family had lived at the residence for approximately one year.
The evidence at trial established that the hole was most likely caused by a rotted tree stump although the evidence was conflicting as to the actual location in the front yard of the tree which was cut down many years ago. The hole was approximately one and one-half to two feet in diameter and five to eight inches deep. There was some grass growing in the hole and some leaves inside of it. A tree root surrounded part of the hole. The hole was located near the sidewalk and the front door which was used as the primary access to the residence. The house was located on a fairly narrow lot and the front yard was approximately fifty feet wide. Although there was testimony and photographs introduced into evidence showing that the hole was obvious and could be seen from quite some distance, plaintiff and his family, including his grandmother, testified that prior to the accident they did not have any knowledge of the hole. Plaintiff had been injured in an automobile accident and also in another previous fall in a hole in the yard near the driveway for which he had instituted a lawsuit against the company whose delivery truck created the hole. Plaintiff testified that as a result of these injuries, he had not been mowing the yard and that the yard was mowed primarily by his wife and brother-in-law. Plaintiff's grandmother testified that she did not go to the rental property very often and had not been to the residence for some period of time prior to the accident.
Plaintiff had ligament surgery on his right knee as a result of his injury on September 29, 1983. Plaintiff had a cast for approximately six weeks and underwent physical therapy. Plaintiff testified that it was three months after the accident before he could walk again. Plaintiff used a wheel chair for approximately a month and a half following the accident and used crutches for approximately another month and a half. Plaintiff testified he was forced to sell his grocery store that he purchased shortly before the accident as he could not work. At the time of trial, plaintiff still had some difficulty with his knee, particularly upon waking up or with weather changes. Plaintiff's treating physician had assigned a 20% disability. This percentage was based on the possibility that plaintiff would have future problems.
Plaintiff instituted this direct action suit against the defendant, the lessor's insurer, on August 2, 1984, alleging that the accident was caused by the negligence of the lessor and that the lessor was strictly liable as the yard presented an unreasonable risk of injury.
TRIAL COURT ACTION
After reviewing the evidence, the trial court found that the plaintiff should have known of the stump hole due to his familiarity with the premises. The court concluded that a reasonably observant person would have seen the hole each time he encountered it and would have taken precautions. Thus, the lessor had no duty to the plaintiff in this instance. Having determined the lessor did not owe a duty to the plaintiff, the court held that comparative negligence was inapplicable. It appears that the trial court found that the theory of *1132 strict liability was inapplicable as the condition did not present an unreasonable risk of harm.
ASSIGNMENTS OF ERROR
On appeal, plaintiff-appellant asserts the following assignments of error:
1. The trial court erred in applying principles of the general duty owed by landowners under the theory of negligence rather than strict liability pursuant to LSA-C.C. Art. 2695;
2. The trial court erred in finding that no duty was owed by the lessor to the appellant instead of applying comparative negligence; and
3. The trial court erred in finding that the stump hole was patently obvious and in imposing constructive knowledge of the defect upon the appellant.
APPLICABLE LEGAL PRINCIPLES
LSA-C.C. Art. 2695 provides as follows:
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
LSA-C.C. Art. 2695 governs a lessor's liability to a tenant for damages caused by vices and defects of the thing leased and places upon the landlord the primary obligation to keep the premises in repair. Gele v. Markey, 379 So.2d 763 (La. App. 4th Cir.1979), writ granted, 380 So.2d 623 (La.1979), affirmed, 387 So.2d 1162 (La. 1980); and Buxton v. Allstate Ins. Co., 434 So.2d 605 (La.App.3d Cir.1983). The article, which provides for strict liability of a landlord for damages resulting from hazardous conditions on the leased premises, is restricted to the landlord-tenant relationship and does not apply to third parties whose rights are protected by other code articles. Campbell v. Tidwell, 407 So.2d 1359 (La.App.3d Cir.1981); Albritton v. J.C. Penney Co., Inc., 385 So.2d 549 (La. App.3d Cir.1980), writ denied, 393 So.2d 727 (La.1980); and Reed v. Ramsay, 355 So.2d 618 (La.App. 4th Cir.1978).
In order for a lessee to recover damages from the lessor under this article due to an alleged vice, defect, or condition in the leased premises, the burden rests upon the lessee to prove by a preponderance of the evidence that a defect existed in the premises and that the defect caused the damages or losses. Latham v. Aetna Cas. Campbell v. Tidwell, supra; Albritton v. J.C. Penney Co., Inc., supra; and Broome v. Gauthier, 443 So.2d 1127 (La.App. 4th Cir.1983), writ denied, 445 So.2d 449 (La. 1984).
A defect has been previously defined under this article as one of such a nature as to constitute a dangerous condition which would reasonably be expected to cause injury to a prudent person using ordinary care under the circumstances. Buxton v. Allstate Ins. Co., supra; Campbell v. Tidwell, supra; Albritton v. J.C. Penney Co., Inc., supra; Krennerich v. WCG Investment Corporation, 278 So.2d 842 (La.App.3d Cir.1973); and Renfro v. South Coast Corp., 374 So.2d 122 (La.App. 1st Cir.1979). Considering more recent jurisprudence in the area of strict liability and the introduction of comparative negligence into Louisiana tort law, the definition of defect under Article 2695 might be more appropriately expressed as meaning a condition which presents an unreasonable risk of harm and renders the premises unreasonably dangerous in normal use. This standard is consistent with the strict liability standards contained in Civil Code Articles 2317, 2318, 2319, 2320, 2321, and 2322. See Entrevia v. Hood, 427 So.2d 1146 (La. 1983); Kent v. Gulf States Utilities Co., 418 So.2d 493 (La.1982); Hunt v. City Stores, Inc., 387 So.2d 585 (La.1980); and Loescher v. Parr, 324 So.2d 441 (La.1975).
*1133 LSA-C.C. Art. 2695 places liability on the status of lessor rather than upon personal fault. Thus, ignorance or latency of a defect is not a defense to liability under the article and it is not necessary to show negligence in order to recover. Liability of the landlord attaches whether or not he had actual knowledge of the defect. Buxton v. Allstate Ins. Co., supra; Smith v. Hartford Acc. & Indem. Co., 399 So.2d 1193 (La.App.3d Cir.1981), writ denied, 406 So.2d 604 (La.1981); and Barnes v. Housing Authority of New Orleans, 423 So.2d 750 (La.App. 4th Cir.1982). Fault of the tenant-victim is a defense to actions under LSA-C.C. Art. 2695 if it is shown that the tenant knew of the defective condition, the premises could be safely used with the use of reasonable care, and the tenant failed to exercise that standard of care. Renfro v. South Coast Corp., supra and Phillips v. Duplantis, 353 So.2d 335 (La.App. 1st Cir. 1977), writ denied, 354 So.2d 1375 (La. 1978). The negligence or fault of the tenant-victim is not an absolute bar to recovery but requires the application of principles of comparative negligence. LSA-C.C. Art. 2323; and see Bell v. Jet Wheel Blast, Div. of Ervin Ind., 462 So.2d 166 (La.1985).
Where there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's determination, this finding should not be disturbed on review by the appellate court unless it is clearly wrong or manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koenring Company, 283 So.2d 716 (La.1973); and Campbell v. Tidwell, supra.
LIABILITY OF LANDLORD
The primary issue presented by plaintiff-appellant on appeal is whether the stump hole on the leased premises was a defect, thus rendering the landlord strictly liable under the provisions of LSA-C.C. Art. 2695. The question presented in this case is whether or not the trial court was clearly wrong in finding that the stump hole did not present an unreasonable risk of harm and thus was not a defect as defined earlier. Based upon our review of the record, it does not appear that the trial court was clearly wrong.
The evidence establishes that while the stump hole, which might be more accurately described as a depression, was fairly large in diameter, it was relatively shallow. The hole was located near the front walkway, was not concealed in any fashion and its location was such that a reasonably observant tenant should have seen it on many prior occasions. Further, the evidence indicates that as the hole was caused by the deterioration of a tree stump, it had been formed in the yard over a considerable length of time and must have existed in some form or another during the duration of plaintiff's occupancy of the residence. The only reasonable inference from the evidence presented at trial is that plaintiff was well aware of its existence as it was located within a few feet of the sidewalk and front door used daily by plaintiff.
The yard of a residence is not intended or expected to have a completely "table-top" smooth surface. Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury to tenants. This particular relatively shallow depression would not be expected to cause a tenant of the property to stumble and fall. The tenant could walk around the hole or even walk through it with reasonable caution and it did not present an unreasonable risk of injury.
The trial court correctly found that the hole or depression did not present an unreasonable risk of harm and that the accident was caused solely by the fault of the plaintiff.
For these reasons, the judgment of the trial court in favor of defendant, Cambridge *1134 Mutual Fire Insurance Company, is affirmed at the cost of plaintiff, Michael Wood.
AFFIRMED.