521 So.2d 431 (1988)
Collins BILLIZONE
v.
WINN-DIXIE LOUISIANA, INC.
No. CA-8246.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1988.
*432 Montgomery, Barnett, Brown, Read, Hammond & Mintz, Paul M. Lavelle, Lawrence G. Pugh, III, New Orleans, for appellant.
Curry & Blankenship, Rene A. Curry, Jr., New Orleans, for appellee.
Before GULOTTA, C.J., and KLEES and LOBRANO, JJ.
GULOTTA, Chief Judge.
In this slip and fall suit by a supermarket patron, the defendant store appeals from a summary judgment dismissing its third party demand against the owner of the shopping center where the store is located. In granting the dismissal, the trial judge concluded that the alleged accident had occurred in an area in the control of the supermarket, rather than in a "common area" of the shopping center for which the owner was responsible. We affirm.
According to the petition, plaintiff slipped and fell on orange peelings on a concrete walkway about 6 to 8 feet outside of the entrance door to the Winn-Dixie store at 2841 St. Claiborne Avenue in New Orleans, as he was pushing a shopping cart of groceries. The site of the fall was in an area known as the shopping cart "corral", a perimeter of metal railings surrounding the walkway in front of the store. This barricade had openings wide enough to permit customers to pass through, but prevented them from taking shopping carts beyond the corral.
The Winn-Dixie store was located with other retail establishments in a strip shopping center owned by Gulf Coast Oil of Mississippi, Inc. The stores fronted on a walkway and parking lot. A portion of the front of the Winn-Dixie store, however, projected across the walkway to the parking area and had entrance doors on either side. With Gulf Coast's permission, Winn Dixie had constructed the shopping cart corral on the sidewalk leading to the entrances to the store.
The shopping center lease provided that Gulf Coast would indemnify Winn-Dixie for claims from accidents occurring on all "common areas" of the shopping center, including sidewalks. The lease further provided, however, that Winn-Dixie would indemnify and hold the lessor harmless from any liability from an accident occurring in the leased premises. After constructing the corral, the supermarket further agreed to indemnify and hold Gulf Coast harmless "from any claim or loss by reason of an accident or damage to any person or property directly caused by the existence and/or use of such shopping cart device." Winn-Dixie was also responsible for keeping entryways and delivery areas adjoining its building reasonably clean and free from rubbish and dirt.
In response to plaintiff's petition, Winn-Dixie third partied Gulf Coast on the grounds that the landlord had agreed to hold Winn-Dixie harmless from plaintiff's claim. Gulf Coast answered the third party demand by asserting that the accident had not occurred in a common area available to other shopping center tenants or their customers, but rather in an area leased to or exclusively used by Winn-Dixie.
The trial judge subsequently upheld Gulf Coast's motion for summary judgment dismissing Winn-Dixie's third party demand. The judge concluded that there was no genuine issue of material fact, and that the property was under Winn-Dixie's control.
Appealing, Winn-Dixie argues that the construction of the shopping cart corral did not change the nature of the sidewalk as a common area. In this regard, Winn-Dixie points out that it has paid no additional rent after constructing the corral, *433 and that the hold harmless clause for accidents "directly caused" by the shopping cart device does not include a slip and fall accident on the sidewalk as alleged in the petition. Under these circumstances, the supermarket contends that Gulf Coast is not entitled to be exonerated as a matter of law, and that there is a genuine factual issue concerning the status of the sidewalk. We disagree.
For purposes of the summary judgment on the third party demand, there is no factual dispute that plaintiff allegedly slipped and fell in the corralled area as he was pushing a shopping cart. Rather, the issue confronting the court is a legal one, i.e., whether the corral is a common area or one within Winn-Dixie's control within the meaning of the lease and its amendments.
In a letter to Gulf Coast on December 18, 1969, Winn-Dixie noted its problems with loss of shopping carts and proposed "... to erect the barricade pipes on the outside of the store, taking in the area presently devoted to the shopping cart down ramp in the front of our store." [Emphasis ours]. Winn-Dixie desired to "... pave an area to the same height as the sidewalk and projecting out 6' or 8'" and to build the corral of pipes "... so that customers could leave the store, but would not be able to move the shopping carts from directly in front of the store."
Subsequently, in the January 26, 1970 letter agreement amending the lease, Winn-Dixie agreed to maintain the corral that it had erected at its own expense, and noted that its purpose was "... to prevent the removal of our shopping carts from our premises...." [Emphasis ours]. Winn-Dixie further agreed to indemnify and hold the landlord harmless from any accident "... directly caused by the existence and/or use of such shopping cart device." The letter also stated: "It is understood that said device necessarily partially obstructs the sidewalk in front of our premises."
Based on this letter agreement, the lease, the photographs, and the pleadings, we find no error in the trial judge's conclusion that the accident occurred in an area under Winn-Dixie's control.
In Albritton v. J.C. Penney Co. Inc., 385 So.2d 549 (La.App. 3rd Cir.1980), writ denied 393 So.2d 727 (La.1980), the Third Circuit intrepreted the phrase "common areas" in a shopping center lease to mean areas that are used conjointly by mall tenants. In Albritton, a shopping center owner responsible for the cleaning of common areas was not liable where a plaintiff had slipped and fallen on a foreign object on an inclined entranceway included in the premises leased by the tenant.
Although the sidewalk area in the instant case was not originally leased to Winn-Dixie, the supermarket appropriated it to its own use by constructing the corral and partially enclosing the area to confine carts used by its patrons. As such, the corral became an extension of Winn-Dixie's store and, though no additional rent was charged, the supermarket used the enclosure to further its business interests. The space was thus transformed from a common sidewalk area into one under the supermarket's control.
We further conclude that Winn-Dixie's agreement to indemnify Gulf Coast from accidents "directly caused by the existence and/or use of such shopping cart device" applies to slip and fall accidents in the corral. As counsel for Gulf Coast has pointed out, the only way for patrons to "use" the corral is to walk through it with their shopping carts. Indeed, because patrons are unloading groceries and leaving the carts behind in this confined area of ingress and egress, there is a risk that goods may be dropped in the corral. In this sense, a slip and fall on a foreign substance in a corral is an accident "directly caused" by the presence and use of the shopping cart device, no less than is a collision with the barricade.
Having so concluded, we affirm the trial court's judgment dismissing the third party demand.
AFFIRMED.