623 So.2d 131 (1993)
Anthony M. CHERRY
v.
Anthony J. HERQUES, M.D.
No. 92 CA 1211.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
*132 Darryl J. Tschirn, Metairie, for plaintiff and appellantAnthony M. Cherry.
Michael J. Furman, New Orleans, for defendant and appelleeAnthony J. Herques, M.D.
Before CARTER, LeBLANC and PITCHER, JJ.
LeBLANC, Judge.
Anthony M. Cherry, plaintiff-appellant, sued his doctor, Anthony J. Herques, for damages he alleges he received during surgery. The matter was tried before a judge, and at the close of plaintiff's case, Dr. Herques moved for involuntary dismissal pursuant to La.C.C.P. art. 1672 B. The trial judge granted Dr. Herques' motion, dismissing Mr. Cherry's claims with prejudice. We affirm.

*133 FACTS
On September 13, 1989, Mr. Cherry was seen by Dr. Herques, an ear, nose, and throat specialist, for hearing loss and drainage from his right ear. Dr. Herques noted the presence of granulation tissue in the right ear, and his diagnosis was chronic otitis media, long term infection in the middle ear. He prescribed medication to fight the infection and reduce the inflammation. On Mr. Cherry's second office visit, Dr. Herques noted the presence of a polyp in the right ear canal. His office notes indicate Mr. Cherry's complaint of ear problems was present since childhood.
On subsequent visits, mastoid x-rays were taken, a mastoid CT scan was done, Dr. Herques aspirated the polyp, and a segment of the polyp was sent for biopsy. The results indicated no malignancy. During Mr. Cherry's office visit of October 9, 1989, a right tympanomastoidectomy was scheduled for October 13, but then canceled. The surgery was rescheduled, again for October 13.
Mr. Cherry returned to Dr. Herques' office on October 10 for a physical and medical history, and, at this time, Mr. Cherry signed the hospital consent forms.
During surgery, Dr. Herques removed the polyp from the ear canal and performed a tympanomastoidectomy. A tympanomastoidectomy is a variable procedure; the pathology dictating what is to be done. The mastoid area, the area immediately behind the ear, is opened and cleaned of infection, diseased bone is removed, and reconstruction of the outer and middle ear is attempted. This procedure, followed by administering antibiotics, allows the chronically infected ear to heal.
Dr. Herques testified that during surgery, the facial nerve was encountered and injured, resulting in weakness and some paralysis on the right side of Mr. Cherry's face. The facial nerve is the motor nerve of the muscles of expression and movement in the face, chin, and neck. Dr. Herques stated Mr. Cherry's facial nerve was located extremely high, above its normal position. Immediately after surgery, Mr. Cherry was given high doses of steroids to reduce swelling; however, the weakness and partial paralysis on the right side of his face did not improve.
Dr. Herques consulted with Dr. Robert Harold Cox of Ochsner Foundation Hospital. Dr. Cox performed nerve graft surgery on October 26, 1989, in hopes of regaining both motion and muscle tone. On the day of trial, Mr. Cherry testified he has recovered some facial movement, but still has difficulty controlling his facial muscles.
Mr. Cherry testified Dr. Herques did not discuss with him the seriousness or the method of surgery, that Dr. Herques did not accurately inform him of the length of surgery or of the possible risks, and that had he known facial paralysis was a possible complication, he would not have had the surgery.
At the close of plaintiff's case, Dr. Herques moved for an involuntary dismissal, pursuant to La.C.C.P. art. 1672 B. The trial court granted the motion, dismissing Mr. Cherry's claims. The trial court reasoned Mr. Cherry failed to prove any negligence by Dr. Herques, that the doctrine of res ipsa loquitur did not apply in this case, and that the requirements for informed consent had been met.
Mr. Cherry appeals, asserting as error the trial court's ordering an involuntary dismissal after a prima facie showing that malpractice had occurred.
INVOLUNTARY DISMISSAL
La.C.C.P. art. 1672 B provides:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In non-jury cases, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence on his case-in-chief *134 to establish his claim by a preponderance of the evidence. Shafer v. State, Through DOTD, 590 So.2d 639, 642 (La.App. 3rd Cir.1991). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff, but may, based upon a preponderance of the evidence, render judgment in favor of the mover. Egle v. Kidd, 442 So.2d 669, 671 (La.App. 1st Cir.1983). The judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. A dismissal based on La.C.C.P. art. 1672 B should not be reversed in the absence of manifest error. Shafer, 590 So.2d at 642.

MEDICAL MALPRACTICE
Mr. Cherry argues the trial court erred when it granted a dismissal after he proved a prima facie case in medical malpractice. In a medical malpractice action against a physician or surgeon, the plaintiff has the burden of proving:
(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians ... licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
La.R.S. 9:2794 A.
The standard of knowledge, skill and care for physicians and surgeons is best determined from the testimony of other experts in the field. Stein v. Insurance Corp. of America, 566 So.2d 1114, 1119 (La.App. 2d Cir.), writ denied, 569 So.2d 984 (1990). Appellate courts should not disturb factual findings in the absence of manifest error. Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978).
The trial court, in its oral reasons, stated:
The court feels that there's been absolutely no proof that Dr. Herques did not possess the degree of knowledge and/or skill to be possessed by a doctor in his selected field of specialty, nor has there been any proof that Dr. Herques failed to use reasonable care and diligence along with his best judgment in the application of that skill in the operation that he performed on Mr. Cherry. Only Dr. Herques testified as to his treatment, and his treatment was, in his opinion, appropriate treatment for Mr. Cherry. The court notes that Mr. Cherry could have called other physicians to establish the wrong of Dr. Herques if in fact Mr. Herques was medically negligent. Mr. Cherry elected not to call any other physician. The court finds from the record that clearly there has been no medical negligence established in accordance with the provision of Title 9, Section 2794.
In the instant case, there is no expert testimony that Dr. Herques breached the proper standard of care. The absence of expert testimony that the physician breached the proper standard of care has prevented the imposition of liability. See Moore v. Healthcare Elmwood, Inc., 582 So.2d 871, 878 (La.App. 5th Cir.1991); Peters v. ABC Ins. Co., 552 So.2d 430, 434 (La.App. 4th Cir.1989). Without any expert testimony supporting Mr. Cherry's claims of medical malpractice by Dr. Herques, the trial court was correct in holding the plaintiff failed to meet his burden of proof.

RES ISPA LOQUITUR
The plaintiff argues the trial court should not have found the doctrine of res ipsa loquitur inapplicable. The doctrine of *135 res ipsa loquitur is an evidentiary rule that requires a defendant to exculpate himself from an inference of negligence. Broadway v. St. Paul Ins. Co., 582 So.2d 1368, 1372 (La.App. 2nd Cir.1991). It applies when: the accident would not normally occur in the absence of negligence, there exists an absence of direct evidence to explain the activities leading to the injury, and the accident or injury was caused by an agency or instrumentality within the actual or constructive control of the defendant. Sabella v. Baton Rouge General Hospital, 408 So.2d 382, 383 (La.App. 1st Cir.1981).
The doctrine allows an inference of negligence to arise from the common experience of the factfinder that such accidents normally do not occur in the absence of negligence. Additionally, the doctrine does not dispense with the rule that negligence must be proved. It simply gives the plaintiff the right to place on the scales, "along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence" sufficient to shift the burden of proof. Montgomery v. Opelousas General Hosp., 540 So.2d 312, 319 (La.1989).
The Supreme Court in Cangelosi v. Our Lady of Lake Med. Ctr., (on rehearing), 564 So.2d 654, 665-66 (La.1989), discussed the doctrine of res ipsa loquitur in medical malpractice cases.
In order to utilize the doctrine of res ipsa loquitur the plaintiff must establish a foundation of facts on which the doctrine may be applied.... The injury must be of the type which does not ordinarily occur in the absence of negligence.... In other words, "the event must be such that in light of ordinary experience it gives rise to an inference that someone must have been negligent." ... The basis on which this conclusion is drawn is usually knowledge common to the community as a whole, although in cases such as medical malpractice expert testimony may be used to establish this principle.
. . . . .
Use of the doctrine of res ipsa loquitur in a negligence case, as in any case involving circumstantial evidence, does not relieve the plaintiff of the ultimate burden of proving by a preponderance of the evidence all of the elements necessary for recovery. [Citations omitted.]
In the instant case, the plaintiff did not "establish a foundation of facts on which the doctrine may be applied." There was no expert testimony that negligence could be inferred or that the injury would not have happened in the absence of negligence. Dr. Herques testified the location of Mr. Cherry's facial nerve was not normal, but was abnormally high. He also stated that it is not possible to determine by x-ray or CT scan the exact location of the facial nerve before surgery. Dr. Herques testified he used identifiable bone for reference during the surgery to avoid injury to the facial nerve; however, he encountered Mr. Cherry's facial nerve and partial paralysis resulted. There was no expert testimony offered by the plaintiff that Dr. Herques was negligent.
The plaintiff failed to prove an element necessary for recovery. The trial court was correct in holding res ipsa loquitur was not applicable in the instant case.

INFORMED CONSENT
The plaintiff also argues the trial court erred in holding Dr. Herques obtained informed consent from Mr. Cherry before operating. In recognition of the right to self-determination, surgeons and other physicians are required to provide their patients with sufficient information to permit development of an informed and intelligent decision about whether to submit to a proposed course of treatment.[1] When circumstances permit, the patient should be advised of the character of his ailment, the general nature and risks of the proposed treatment or procedure, the prospects of success, the hazards of failing to undergo any treatment or procedure at all, and the risks of alternate methods of treatment. Broadway, 582 So.2d at 1373-74.
In LaCaze v. Collier, 434 So.2d 1039, 1046 (La.1983), the Supreme Court recognized informed consent can be other than written.
*136 Mr. Cherry's argument that he signed a blank consent form does not persuade us that his consent was uninformed. The testimony clearly established Dr. Herques discussed the surgery with Mr. Cherry and that both Mr. and Mrs. Cherry had an opportunity to discuss with the doctor the plaintiff's condition, the proposed treatment, and risks. In addition, the requirement of disclosure does not require a listing of all the potential complications which might result. Hondroulis v. Schuhmacher, 553 So.2d 398, 403 (La.1988). A rare or remote risk need not be disclosed. Disclosure must be made only when a risk is medically known and of a magnitude that would be material in a reasonable patient's decision to undergo treatment. Hondroulis, 553 So.2d at 404. Dr. Herques testified the risk of facial nerve damage from a tympanomastoidectomy was not a common risk. Mr. Cherry did not introduce any evidence that his injury, unquestionably the result of his surgery, is a known and significant risk. The trial court did not err in holding there was informed consent.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be paid by plaintiff.
AFFIRMED.
NOTES
[1] The Louisiana Uniform Consent Law is found at La.R.S. 40:1299.40.