685 So.2d 541 (1996)
Paula McGINTY, PlaintiffAppellant,
v.
Lionel PESSON, Ida D. Pesson, and Shelter Mutual Insurance Company, DefendantsAppellees.
No. 96-850.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1996.
*542 Christopher R. Philipp, Lafayette, for Paula McGinty.
Michael J. Juneau, Lafayette, for Lionel Pesson et al.
Before SAUNDERS, PETERS, and GREMILLION, JJ.
PETERS, Judge.
This suit arises from a slip-and-fall accident which occurred on premises leased by the plaintiff, Paula McGinty, from the defendants, Lionel and Ida Pesson. Ms. McGinty slipped on the sidewalk leading to her front door, causing severe damage to her left ankle. Following a trial by jury, judgment was rendered finding the parties to be equally comparatively at fault. Ms. McGinty has appealed, alleging as error the finding that she was comparatively at fault and the amount of general damages awarded.

DISCUSSION OF THE RECORD
At the time of the accident, Ms. McGinty was renting an apartment in a triplex from the defendants. The apartment was located in the Fox Run neighborhood in Lafayette, Louisiana. Ms. McGinty had been living in the apartment for approximately one year at the time of the accident. She had originally leased the apartment from John Bridges, but Mr. Bridges had sold the building to the Pessons approximately two months before the accident. On May 1, 1993, the Pessons came to Ms. McGinty's apartment in order to have her sign a new lease. There is conflicting testimony as to exactly what transpired during this visit. Three witnesses testified that during this visit, Mrs. Pesson tripped on one of the steps and remarked as to how dangerous the steps were. However, both Mr. and Mrs. Pesson denied that Mrs. Pesson had tripped on a step or that there had been any discussion whatsoever concerning the steps.
On June 20, 1993, Ms. McGinty and several members of her family were planning to have a cookout in her yard as it was Father's Day. Sometime after 9:00 A.M., everyone had left to run errands in preparation for the cookout and Ms. McGinty went out into the yard, apparently to get the barbecue pit ready for the cookout. She was not carrying anything and did not appear to be distracted by anything. It is important to understand the setup of Ms. McGinty's yard in order to understand how this accident occurred. Ms. McGinty's apartment faces the parking lot, but separating the apartment from the parking lot is a wooden fence which surrounds her yard. Therefore, to get from the parking lot to Ms. McGinty's apartment, one must come through the gate in the wooden fence and proceed on the sidewalk leading to her door. This door is the only entrance to her apartment, and the sidewalk is actually concrete stepping stones, approximately sixteen inches square and four inches high, set down on gravel. Since the stones are merely sitting on the gravel and there is no concrete holding them in place, they have shifted in *543 position quite a bit. The stepping stone involved in this accident was significantly indented from the other stones. Ms. McGinty apparently placed her foot on the edge of the stone and her foot rolled off onto the gravel, causing a fracture of the medial malleolus[1] and crushing the talus[2] in her left foot.
Ms. McGinty's daughter-in-law, Christine Rodriguez, took her to the University Medical Center Emergency Room in Lafayette. Dr. Theodore Knatt, an orthopedic surgery resident at the hospital, performed surgery on Ms. McGinty's ankle on June 24, 1993.[3] Following the surgery, her ankle was placed in a posterior splint and she was required to stay off of it for approximately six months. After the initial six weeks, a cast was placed on Ms. McGinty's ankle for an additional four weeks.[4]
Following the surgery, Ms. McGinty continued to experience pain. On July 14, 1993, she went to see Dr. John E. Cobb, an orthopedic surgeon in Lafayette, for a second opinion. Dr. Cobb described her ankle injury as an inversion injury. An inversion injury refers to a situation in which the ankle goes in one direction, crushing the talus and then actually fracturing off the bone. At this first visit, Dr. Cobb told her that she was healing nicely and that it would just take time, recommended that she stay totally off her ankle, and prescribed pain medication for her. Dr. Cobb next saw Ms. McGinty on August 6, 1993, at which time he removed her cast and took X-rays of her ankle. The X-rays revealed that the fractured ankle was healing nicely but that the talus was demonstrating some loss of bone, some evidence of loss of circulation to portions of the bone, and compression of the ankle joint itself. This condition is known as asceptic necrosis, which is essentially an irreversible condition. By her appointment on October 25, 1993, the fracture of the medial malleolus was completely healed, but the degeneration of the talus was continuing. Dr. Cobb continued to treat her for symptoms of pain associated with the talus. Dr. Cobb additionally treated her for back and neck problems associated with injuries she sustained in an automobile accident on August 30, 1994.
Ms. McGinty next saw Dr. Malcolm Stubbs, an orthopedist at University Medical Center in Lafayette. On August 30, 1995, Dr. Stubbs performed an arthrodesis or fusion on the plaintiff's left ankle. The purpose of this type of surgery is to remove all of the arthritic joint cartilage within the ankle joint and put a fixation device into the ankle joint to keep it from moving to allow the bones themselves to actually grow together and become one solid mass of bone. This surgery was necessary because she developed post-traumatic arthritis of her ankle joint, which became too painful for medical therapy. Essentially this surgery alleviates the pain at the expense of losing mobility in the ankle. The surgery required the grafting of donor bone from Ms. McGinty's knee to be packed into her ankle. After this surgery, she remained in the hospital for four days and had to avoid placing any weight on her ankle for a minimum of two months. At the time of Dr. Stubbs' deposition on December 22, 1995, although her wounds had healed, she still had not reached fusion of her ankle joint. Until this fusion occurs, her ankle must remain in a cast. The time that it takes for fusion to be achieved varies from patient to patient. However, the time period is usually greater for patients who are smokers, which Ms. McGinty is.[5] After the surgery, Dr. Stubbs rated Ms. *544 McGinty's rate of permanent impairment for her ankle at forty percent.
The total medical expenses incurred by Ms. McGinty in connection with her ankle injury were stipulated by the parties at trial as being $3,558.89, and this is the amount awarded by the jury for past medical expenses. The amount is relatively low, considering the treatment that she has required, because she had the surgeries performed at University Medical Center where there is no charge. The trial of this matter occurred only five months after Ms. McGinty's second surgery; thus, there had not been sufficient time for fusion to occur. Dr. Stubbs indicated that once fusion of her ankle is achieved, she should be ambulatory and will require no further treatment. He described ambulatory as being able to walk. Thus, she did not present the jury with any evidence of future medical expenses, and the jury did not award any amount for future medical expenses.
In addition to the award for past medical expenses, the jury awarded $75,000.00 in general damages. However, they found Ms. McGinty fifty percent comparatively at fault with the Pessons, and thus, she will only be able to recover half of this amount. The jury concluded that the sidewalk presented an unreasonable risk of harm, the Pessons were not guilty of any negligence which was a legal cause of the accident, and Ms. McGinty was guilty of negligence which was a legal cause of the accident. Ms. McGinty has appealed, alleging that the jury erred in finding any comparative fault on her part and in awarding an insufficient amount to compensate her for her general damages.

OPINION
It is a well-settled principle that this court may not set aside a jury's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). If there is conflict in the testimony, we should not disturb reasonable evaluations of credibility and inferences of fact even if we feel that our evaluations and inferences are just as reasonable. Id. Therefore, if the jury's findings of fact are reasonable in light of the entirety of the record, this court may not reverse such findings even if we feel that we would have viewed the evidence differently and reached a different result. Id.
In this case, the jury as the trier of fact found the parties to be equally comparatively at fault. Ms. McGinty argues that this sidewalk was the only means of ingress and egress from her apartment and thus, was unavoidable. She also contends that she made the Pessons aware of the danger posed by the sidewalk.[6] However, they contend that they never discussed the sidewalk with Ms. McGinty prior to the accident. When there is more than one permissible view of the evidence, the one chosen by the fact finder can never be manifestly erroneous or clearly wrong. Id.
La.Civ.Code art. 2695 governs a lessor's liability to a lessee for damages caused by vices or defects of the leased property and places on the lessor the primary responsibility for keeping the premises in good repair. The Article only applies to the lessor-lessee relationship and provides strict liability for damages resulting from hazardous conditions on the premises. Wood v. Cambridge Mut. Fire Ins. Co., 486 So.2d 1129 (La.App. 2 Cir.1986). To recover under this Article, the lessee must prove by a preponderance of the evidence that a defect existed on the premises and that such defect was the cause of her damages or losses. Id. The landlord's liability is not based on personal fault but rather on his status as a landlord; thus, liability attaches whether or not the landlord had knowledge of the defect. Id. Therefore, despite the fact that the Pessons denied having any knowledge of the dangerous condition presented by the stepping stones, the jury correctly found them liable due to their status as landlords.
*545 The landlord may reduce his liability by showing that the lessee knew of the defective condition, the premises could be safely used with the exercise of reasonable care, and the lessee failed to use reasonable care. Id. The lessee's negligence or fault is not an absolute bar to recovery but rather triggers the application of the principles of comparative negligence. Id. Apparently, the jury felt that Ms. McGinty had lived in this apartment for approximately one year and was clearly aware of the danger posed by the condition of the sidewalk. John Bridges and she both testified that she had complained to him about the condition of the sidewalk while he was her landlord. The accident would not have occurred if she had been paying closer attention to where she was going and stepped in the middle of the stepping stone rather than on the edge of the stepping stone. She admitted that at the time of the accident, it was a clear, sunny day and that she was not carrying anything, was not in a hurry, and was not looking down at the ground. By her own testimony, she was clearly aware of the danger presented by the uneven sidewalk. The jury obviously felt that victim fault played a role in this accident and assigned fifty percent comparative fault to Ms. McGinty. We cannot conclude that the jury was clearly wrong in determining that she was negligent in not watching more carefully where she was going in an effort to avoid this accident when she was aware of the defective condition of the steps.
In apportioning fault, the fact finder shall consider the nature of each party at fault's conduct and the extent of the causal relationship between such conduct and the damages sustained. Boutte v. Nissan Motor Corp., 94-1470 (La.App. 3 Cir. 9/13/95); 663 So.2d 154. Based on the nature of the accident in this case, we cannot say that the jury was manifestly erroneous in assessing fifty percent of the fault in causing this accident to the plaintiff. We find no merit to this assignment of error.
In reviewing awards for general damages, this court is not to decide what it thinks would have been an appropriate award under the circumstances but rather to decide whether the award represents an appropriate exercise of discretion by the fact finder. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Each award must be analyzed on a case-bycase basis to determine whether it is adequate under the particular facts and circumstances presented by the case under review. Id.
The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.
Id. at 1260 (citations omitted).
The discretion vested in the trial court in setting the appropriate amount of general damages has been described as great, even vast, such that an appellate court should rarely disturb a general damages award. Id. It should be noted that reasonable people will often differ on what they feel is a reasonable award for general damages. An appellate court should only raise or lower a general damages award when the award, in either direction, is beyond what a reasonable fact finder could assess for the effects of this particular injury on this particular victim under these particular circumstances. Id. While we are aware of the serious nature of the injury sustained by Ms. McGinty in this case and the life-changing effects that it has had and will continue to have on her activities, we cannot say that the jury abused its discretion in awarding $75,000.00 for her general damages. We do not believe that $75,000.00 is below the amount that a reasonable fact finder could have assessed based on the circumstances of this case.

DISPOSITION
For the foregoing reasons, the decision of the trial court is affirmed and all costs are *546 assessed to Paula McGinty, plaintiff-appellant.
AFFIRMED.
NOTES
[1] The medial malleolus is the bone on the inside of the ankle.
[2] The talus is the major weight-bearing component of the ankle joint.
[3] The surgery was an open reduction and internal fixation of her left medial malleolus. In the process of this surgery, Dr. Knatt placed three screws through the loose fragment into the tibia in an effort to reduce the fracture site and stabilize it. The screws are used to help the broken bone fragment and tibia grow together.
[4] Dr. Knatt testified that he did not see Ms. McGinty again after June 31, 1993. Dr. Knatt's residency involved rotating from hospital to hospital, and he rotated to another hospital at the end of June 1993.
[5] Dr. Stubbs prescribed Nicoderm, a skin patch, to help Ms. McGinty stop smoking, but the record gives no indication as to whether she was successful in her attempt to stop smoking.
[6] Additionally, John Bridges, the former owner of the triplex, testified that Ms. McGinty had complained to him about the steps. However, the sale of the triplex was handled entirely by a real estate agent, and Mr. Bridges never had any contact with the Pessons. Thus, there is no argument that Mr. Bridges alerted the Pessons to the dangerous condition posed by the stepping stones.