LSHORTESS, J.
Joseph Crucia, Jr. (Crucia), a contractor, sued Barbara and Earl Gravois and their homeowners insurer, State Farm Fire and Casualty Company[1] (defendants), alleging he fell and was injured after he stepped in loose sand in the Gravois’ backyard. Cru-cia’s wife, Virginia Bloomer Crucia, joined in the suit seeking damages for loss of consortium. Before trial Crucia died of causes unrelated to the alleged accident, and his wife and children were substituted for him as plaintiffs. After a bench trial, the trial court ruled in favor of defendants *271 and dismissed plaintiffs’ suit. Plaintiffs appeal.
The facts of this case are seriously in dispute. The only undisputed facts are that on September 14, 1995, Crucia went to the Gravois home to give an estimate for repairs to the home and, accompanied by Mrs. Gravois and Kevin P. Dougherty, walked into the backyard to look at a pump shed.
Plaintiffs contend Crucia stepped into an area of loose sand in the backyard and fell. Although Crucia died before trial, his deposition testimony was introduced into evidence. Crucia had worked in the construction industry for forty years. He stated he went to the Gravois residence with Dougherty to make a bid on repairs to the home. Mrs. Gravois asked him to look at her pump shed in the backyard. The three of them walked together, although he was a step or two ahead of Mrs. Gravois and Dougherty. He saw a large circular area of sand in the backyard. There was only a 1/4- to 1/2-inch difference between the sand and the surrounding grass. He thought it looked safe to walk across, but as soon as his foot hit the edge of the sand, his foot sunk down eight to ten inches. His foot was “submerged” in the sand, and he could not break its “grip.” He stumbled forward and fell, landing on his stomach. He testified Mrs. Gravois saw him fall but did not acknowledge his fall or offer him any help. He left seven to ten minutes later. Four days later he went to the Gravois house when no one was home and took photographs of the sand. Those photographs were introduced at trial.
Dougherty testified he saw Crucia fall. He stated they were walking together and Crucia “just went down.” He was not paying much attention to the ground until Crucia fell; they were focusing more on what Mrs. Gravois wanted done. He stated that the difference in the sand and the surrounding dirt was “black and white” and that one did |3not “need to be a rocket scientist” to determine it was loose sand. He thought Mrs. Gravois must have seen Crucia fall, but he did not recall her saying anything to Crucia when he fell.
Three months after the accident Dough-erty went to the scene with a State Farm claims adjuster, Jay Hayndel, and the plaintiffs’ attorney. He stated the backyard did not look the same, and it was hard for him to pinpoint the area where Crucia fell.
Hayndel testified that when he went to the scene, he checked the whole backyard but could not find any areas that appeared to have been recently filled with sand. He found a small area of sand mixed with soil and photographed the area. The December and September photos are vastly different.
Mrs. Gravois denied that her yard ever looked like the area depicted in the September photos. She stated she was with Crucia the entire time he was at her home and never saw him fall. He did not tell her he was injured either at the scene or later that day when he called with a quote for the cost of the repairs. She stated she first learned of the alleged accident in November 1995 when she received a letter from plaintiffs’ attorney.
The trial court stated that despite the conflicting testimony, it could “resolve this matter by addressing whether the area of the yard as depicted in plaintiffs photographs ... presented an unreasonable risk of harm.” The court then stated:
Plaintiff testified that the ground where the accident occurred was level with only a one-fourth inch difference in elevation between the grass and sand. As set forth in the jurisprudence above, every irregularity in a premises does not constitute an unreasonably dangerous defect. Backyard topographies are not always perfect, and it is not uncommon to find sand in a backyard. Further, this was not a hole but rather a large circular area of sand. The Court notes that this sandy area in defendant’s backyard lacked any social [utility], however, *272 the likelihood of this condition causing injury was minimal. Additionally, the area was not designed or designated for regular and frequent foot traffic....
.... The Court notes that plaintiff saw the sandy area before he attempted to traverse it. This area was clearly visible because of the contrast in color between the sand and the grass. Finally, the plaintiff worked in the construction industry for approximately forty years and should have been aware of any risk posed by loose sand of this nature.
After reviewing the evidence presented at trial and the jurisprudence, the Court finds this minor imperfection or irregularity in the defendants’ yard did not pose an unreasonable risk of harm to the plaintiff.
Plaintiffs contend the trial court erred in reaching the conclusion that the condition did not create an unreasonable risk of harm without first resolving the | ^credibility issues, in determining the condition was not unreasonably dangerous, and in failing to apply the doctrine of res ipsa loquitur.
DID THE TRIAL COURT MAKE CREDIBILITY FINDINGS?
Although the trial court avoided making explicit credibility findings, such findings are implicit in the trial court’s reasons for judgment quoted above. The court obviously believed that there was a sandy area in the Gravois yard and that plaintiff fell. The court must have disbelieved Crucia’s description of the sandy area as a morass that swallowed his foot, however, since it found the area to be a minor imperfection or irregularity with little likelihood for causing injury. The trial judge, who heard and saw the witnesses, was certainly free to believe most, but not all, of Crucia’s testimony.[2] The trial court’s findings, based on the entire record before us, are permissible views of the evidence to which we must give deference.[3]
DID THE SANDY AREA PRESENT AN UNREASONABLE RISK OF HARM?
Plaintiffs contend the trial court erred in finding the sandy area did not present an unreasonable risk of harm. In Reed v. Wal-Mart Stores,[4] the Louisiana Supreme Court directed appellate courts to use a manifest-error standard when reviewing a determination whether a condition presented an unreasonable risk of harm because “of the plethora of factual questions and other considerations involved.” A reviewing court may disturb the lower court’s holding only upon a finding that the trier of fact was clearly wrong.[5]
In making that determination, the fact-finder must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. The trial court made a risk/utility analysis in this case. The court found the sandy area lacked any social utility, but the likelihood of injury was minimal, particularly since this area was not designated for regular and frequent foot traffic. The court also noted the condition was patently obvious and easily avoidable.
Not every minor imperfection or irregularity will give rise to liability. A premises defect must be of such a nature as to constitute a dangerous condition that would reasonably be expected to cause injury to a prudent person using ordinary care under | Kthe circumstances.[6] In Wood *273 v. Cambridge Mutual Fire Insurance Company,[7]. the court set forth the standard applicable to a residence yard:
The yard of a residence is not intended or expected to have a completely “table-top” smooth surface. Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury ....
Crucia admitted he saw the sandy area and stepped into it, even though he could just as easily have walked around it. He stated this was not a hole but a large, clearly obvious circular area of sand that was almost level with the surrounding soil. The trial court’s conclusion that this area was not unreasonably dangerous was not manifestly erroneous.
RES IPSA LOQUITUR
Plaintiffs contend the trial court erred in failing to apply the doctrine of res ipsa loquitur. Res ipsa loquitur is an evi-dentiary rule applicable when the accident is the type that normally would not occur in the absence of negligence; there is no direct evidence explaining the activities leading to the injury; and the accident was caused by an agency or instrumentality within the actual or constructive control of the defendant.[8] There are many reasons one can fall while walking across the yard of a residence other than negligence. Thus, plaintiffs have failed to meet the first requirement of the doctrine of res ipsa.
CONCLUSION
The trial court made factual findings based on implicit credibility calls. These findings were not manifestly erroneous. The court was not clearly wrong in applying these findings and concluding this area did not present an unreasonable risk of harm. Finally, the trial court did not err when it did not apply the doctrine of res ipsa loquitur. For these reasons, the judgment of the trial court is affirmed at plaintiffs’ costs.
AFFIRMED.

. The insurer was incorrectly listed as State Farm Insurance Company in the petition.

. See McCartney v. Columbia Heights Nursing Home, 25,710 (La.App.2d Cir.3/30/94), 634 So.2d 927, 936.

. See Stobart v. State through DOTH, 617 So.2d 880 (La.1993).

. 97-1174, p. 4 (La.3/4/98), 708 So.2d 362, 364.

. 97-1174 at 4, 708 So.2d at 365.

. Lee v. Magnolia Garden Apts., 96-1328, p. 14 (La.App. 1st Cir.5/9/97), 694 So.2d 1142, *273 1150, writ denied, 97-1544 (La.9/26/97), 701 So.2d 990.

. 486 So.2d 1129, 1133 (La.App. 2d Cir. 1986).

. Cherry v. Herques, 623 So.2d 131, 135 (La.App. 1st Cir.1993).